*1000
 
 Opinion
 

 TURNER, P. J.
 

 I. Introduction
 

 Mark N., the father of a dependent child, Sabrina N. (Sabrina), has filed a petition for an extraordinary writ of mandate (Cal. Rules of Court, rule 39.IB) after the respondent court terminated reunification services and set a permanent plan hearing under Welfare and Institutions Code section 366.26.
 
 [1]
 
 Adoption is the intended permanent plan. The father was incarcerated for all but one month of a seventeen-month reunification period. The father was not in custody for the first month of the reunification period. We find there was no substantial evidence the department of children and family services (the department) offered or provided reasonable reunification services to the father during any of the 17-month reunification period as required by law. We further conclude: Under section 366.22, subdivision (a), the court was not authorized to extend reunification services beyond the 18-month hearing; moreover, this case falls within the proscription of section 366.26, subdivision (c)(2), which precludes termination of parental rights when, as here, the department has failed to offer or provide reasonable reunification services to a parent throughout the reunification period; however, the respondent court has limited discretion under section 352 to continue the 18-month hearing; and on remand, if the father is incarcerated, the respondent court may in the alternative find that offering reunification services would be detrimental to the interests of the minor (§361.5, subd. (e)(1)) and reissue the order terminating reunification services and setting a section 366.26 hearing. Therefore, we order issuance of a peremptory writ of mandate, to be effective forthwith, directing the respondent court to either continue the 18-month hearing pursuant to section 352, or find that offering reunification services to the father, if incarcerated, would be detrimental to Sabrina as permitted
 
 by
 
 section 361.5, subdivision (e)(1). We do not reach the question whether a finding of detriment under section 361.5, subdivision (e)(1), would avoid the proscription of section 366.26, subdivision (c)(2).
 

 II. Procedural and Substantive History
 

 Sabrina was bom on January 7, 1996. She was taken into custody by the department in April 1996, when she was three months old. Since that time, Sabrina has been living with a foster mother who is also: the former foster parent of Sabrina’s natural mother; Sabrina’s potential adoptive mother; the
 
 *1001
 
 adoptive parent of Sabrina’s older sibling; and Sabrina’s younger sibling’s foster parent. Sabrina is now two years old.
 

 On March 21, 1996, prior to Sabrina’s detention, her parents had signed and agreed to comply with a voluntary family maintenance agreement under the auspices of the department. (§ 301.) The parents and Sabrina were then residing in a sober living program. The father, who had a long history of cocaine use, had enrolled in drug counseling and testing. The father was interviewed by a social worker. In that interview, the father admitted he had used cocaine and had a drug problem, but claimed he had not used any narcotics since Sabrina’s birth. However, he told the owner of the sober living program he had used drugs on February 23 or 24, 1996, more than a month after Sabrina was bom.
 

 The father had a history of domestic violence. He had repeatedly abused the mother. The mother had been in and out of shelters. The father had assaulted the mother more than 10 times in the one and one-half months the family resided in the sober living program. Sabrina was present during these violent altercations. Each time, the father admitted to a drug abuse worker: He had beaten the mother; he said she “made him mad”; and she “pushed [him] too far.” When asked about prior domestic violence related arrests, the father told children’s services workers they “were due to a previous relationship and had nothing to do with the mother.” The father expressed a willingness to participate in domestic violence counseling.
 

 In addition to that related above, the father had a long criminal record dating from 1985. He had been detained and released on multiple occasions. He had been convicted of several felonies: transportation or sale of a controlled substance; receipt of stolen property; and theft of an automobile. His performance on probation and parole had been poor. His probation on the narcotics conviction was revoked when he committed a robbery. His probation on the stolen property conviction was revoked when he committed a burglary. The father’s parole in connection with his automobile theft conviction was revoked when he committed a burglary. He had also been the subject of a domestic violence restraining order. Later, he had been convicted of a misdemeanor violation of the restraining order.
 

 On April 5, 1996, the department was contacted by personnel at the sober living program and advised that a day earlier the father had beaten the mother in Sabrina’s presence. A drug abuse worker described the assault as follows: “[The father] kicked [the mother] in the mouth, on the stomach. She was on the kitchen floor balled up, he kept kicking her and kicking her.” The mother said the father had punched and kicked her. The father denied he had
 
 *1002
 
 punched the mother, but admitting pushing and shoving her.
 
 [2]
 
 The father was told children’s services workers were on their way to the sober living program residence. A children’s services worker instructed the father not to leave the facility with Sabrina. The father said they “were not going to take his baby and he was not going to stay . . . .” The father fled with Sabrina, taking her to Mexico.
 

 On Thursday, April 11, 1996, the father and Sabrina were located. Sabrina was very ill with an untreated viral infection. The parents agreed Nancy S. should care for Sabrina “until they were on their feet.” Nancy S. had been the mother’s foster parent. She was also the adoptive parent of Sabrina’s older sibling, Ñola S. Nancy S. was willing to care for Sabrina. At the department’s request, Nancy S. brought Sabrina to its offices. Sabrina was taken into custody.
 

 The maternal grandmother, the mother’s adoptive parent, contacted the department and expressed an interest in taking care of Sabrina. However, the maternal grandmother also reported the father had threatened to kill her if she did so. The father later denied making that threat. On April 12,1996, the father advised children’s services workers he would enter an inpatient drug treatment program. He wanted Nancy S. to care for Sabrina until he was stabilized. The father expressed a desire to obtain custody of Sabrina.
 

 A section 300 petition was filed on Monday, April 15, 1996. The minor was then three months old. The petition alleged: The father had a history of substance abuse and was a frequent user of cocaine; Sabrina had been exposed to violent altercations between the parents; the parents failed to obtain necessary medical treatment for Sabrina’s viral infection; the parents failed to comply with the voluntary family maintenance agreement; and the father was in a drug rehabilitation center and could not care for Sabrina. The detention report, dated April 15, 1996, noted that despite the circumstances leading to the detention, the parents had obtained shelter for Sabrina (following one or two days of homelessness) and showed good judgment in allowing Nancy S. to care for Sabrina. Further, both parents had ensured Sabrina received immunizations and checkups at a shelter and both had sought parenting classes. In addition, the father had obtained drug counseling as part of the voluntary family maintenance agreement. As of the date of the report, the father was in an inpatient drug treatment program. On April 16, 1996, Sabrina was detained and placed with Nancy S. The department was ordered to provide family reunification services. Further, the mother’s,
 
 *1003
 
 maternal grandmother’s, and caretaker’s addresses were to remain confidential from the father.
 

 The father was arrested for the transportation or sale of a controlled substance, a violation of his probation or parole. As of April 29, 1996, he was in custody in the Los Angeles County jail. The father telephoned children’s services worker Sheila Allen on May 3, 1996, stating he had recently been released from jail and had no residence. Reports filed with the court on May 14, 1996, listed the father’s whereabouts as unknown. The father was incarcerated on May 22, 1996, and remained in custody at the time reunification services were terminated, on September 26, 1997. He was initially incarcerated at “Wayside,” and later at San Quentin prison.
 

 Pursuant to a disposition report filed on May 14, 1996, the department’s case plan for the father included: drug and alcohol abuse treatment; random drug testing; domestic violence counseling; parenting classes; alcoholics anonymous; maintaining stable housing; and reasonable monitored visitation with Sabrina. The department identified its responsibilities as: providing referrals for substance abuse testing, counseling, and parent education classes; having regular contact with agencies providing services to the family; monitoring the parents’ compliance with the case plan; and having face-to-face contact with the parents at least once a month.
 

 The jurisdictional and dispositional hearings were held on May 14, 1996. The father was not present. The dependency petition was sustained in full and Sabrina was removed from her parent’s physical custody. The respondent court ordered the department to provide family reunification services. It ordered the father to participate in: drug and alcohol abuse counseling; random drug testing, parenting classes; and domestic violence counseling.
 

 In a request for nondisclosure of Sabrina’s whereabouts to either parent filed on October 9, 1996, Ms. Allen, the children’s services worker, reported: the father had told Nancy S. during phone conversations he would do whatever was necessary to get his child back; in his calls to Nancy S., the father had made “innuendoes”; Nancy S. had placed a “block” on her telephone to prevent calls from the father; the mother had come into the department with black-and-blue marks; she said the father had sent his friends to beat her; as a result, she would not comply with the family reunification plan; and the father was expected to be released from prison by April 1997. The respondent court issued the requested nondisclosure order.
 

 The six-month judicial review report, dated November 13, 1996, stated: “Father has been incarcerated in state prison and has not complied with court
 
 *1004
 
 orders. Father has been in contact with the department through letter contact. Prior to father being incarcerated [children’s services worker] informed father of court ordered programs that he needs to complete. Father was incarcerated before [children’s services worker] could provide him with referrals.” The father’s case plan remained unchanged. The department’s report noted the father did not participate in the development of the case plan because he was incarcerated. The report also recommended the father have reasonable monitored visitation with Sabrina. The department identified its responsibilities as: providing referrals for services; having regular contact with agencies providing services to the family; monitoring the parents’ compliance with the case plan; and, in lieu of face to fact visits with the father, because of his incarceration, monthly telephone or written contact.
 

 The father was not present at the six-month review hearing held on November 13, 1996. An affidavit for the father’s attendance (preliminary to a court order for removal of a prisoner) for the November 13, 1996, hearing had been prepared. The affidavit was signed by Ms. Allen, the children’s services worker, but it was not signed by a deputy county counsel. The father was later advised the transportation order was not processed promptly, resulting in his inability to attend the hearing. The court ordered Sabrina’s placement continued. It further ordered the department to provide reunification services.
 

 An adoption assessment was prepared on May 9, 1997. The adoption worker concluded Sabrina was acceptable for adoptive planning. The assessment also noted Sabrina’s caretaker, Nancy S., wanted very much to adopt the child.
 

 The 12-month judicial review report was filed on May 13, 1997. The department continued to recommend that the father have monitored visits with Sabrina. However, it further recommended that family reunification services be terminated and Sabrina be referred for adoptive planning. The recommendation was based on the parents’ failure to complete any of the case plan goals. With respect to the father, the reported stated: “Father has been incarcerated in state prison and has not complied with court orders. Prior to father being incarcerated [children’s services worker] informed father of court ordered programs that he needs to complete. Father was incarcerated before [children’s services worker] could provide him with referrals. [<$] Father has an extensive criminal background involving domestic violence, narcotics, theft and various other charges. (CII attached.) [^Q Father has been in contact with the department through letter contact (see attached father’s and department letters).” The department’s report identified the father’s responsibilities under the case plan as follows: “Father shall
 
 *1005
 
 attend drug/alcohol counseling, random drug testing, AA/CA, parenting classes, domestic violence classes.” The father was scheduled to be released from prison one month hence, on June 29, 1997. With respect to Sabrina, then 16 months old, the May 13, 1997, report stated in part: “Before minor came in to [sic] placement she had been exposed to violent altercations. Sabrina has sudden screaming, crying and shaking when there is a loud noise such as sneezing, door closing hard, loud knock, or loud noise from TV. Minor has improved and isn’t as agitated. If there is any raising of voices such as children having an argument while playing, minor will start crying with a frantic welling [sic] cry and it takes a while before foster mother can get minor to calm down.”
 

 There was evidence of correspondence between the father and the department. The father wrote to Ms. Allen, the children’s services worker, on December 12, 1996. The father complained his December 12 letter was the fifth time he had written to Ms. Allen and that he had not received any response to his first four letters. Ms. Allen wrote to the father on December 31, 1996,
 
 acknowledging that she had received four letters from him.
 
 She reported she had requested his attendance at the November 13 hearing and she was unaware he had not been present until she received his letter. She said no changes had been made in Sabrina’s placement. Further, Ms. Allen related that Sabrina was “doing very well.” On January 14, 1997, the father wrote to the Peter Digre, the director of the department. He complained about Ms. Allen’s failure to respond to his letters. One month later, on February 20,1997, the father wrote another letter to Ms. Allen. On February 25,1997, Renee Powers, acting deputy director of the department, responded to the father’s January 14 letter to Mr. Digre. On March 3, 1997, the father again wrote to Mr. Digre. He acknowledged he had received a letter from Ms. Powers in response to his complaints concerning Ms. Allen. Ms. Allen sent a second letter to the father on March 20,1997. She advised him that at the next hearing, set for May 13, 1997, she would be recommending adoption as the permanent plan for Sabrina.
 
 [3]
 
 The father’s final letter to Ms. Allen was dated April 8, 1997.
 

 The 12-month review hearing began on May 13, 1997. The father was present. Counsel was appointed to represent him. The respondent court specifically found the current case plan was “appropriate.” The matter was set for a contested hearing on June 4, 1997. The respondent court ordered that the father be kept in custody in the Los Angeles County jail to facilitate
 
 *1006
 
 his appearance at the next scheduled hearing. Despite the respondent court’s order, the father was not present at the June 4, 1997, hearing. The paternal grandmother, uncle, and aunt were in attendance. The hearing was continued to July 9, 1997, for a supplemental report with regard to the mother. The respondent court noted the father’s presence at the July 9 hearing would not be necessary.
 

 In its supplemental report filed on July 9, 1997, the department reported that on June 28,
 
 1996,
 
 when Sabrina was five months old, the father had contacted the department about placing her with his brother and sister-in-law in San Jose. The children’s services worker told the father to have his relatives call her. No call from the paternal uncle was ever received. The department contacted the paternal uncle one year later, on July 3, 1997. The paternal brother said he wanted what was best for Sabrina and he was willing to adopt her. There is no evidence the brother’s home was ever investigated as a possible placement. In its July 9, 1997, report, the department noted: “[T]here has been [no] visitation or calls [by the uncle] to establish a relationship with minor.” The report also stated: “At this time there are two parties that are interested in adopting minor Sabrina, foster mother Nancy [S.] and paternal Uncle and Aunt Jacob [N.] It would be in [Sabrina’s] best interest to continue [to] be in minor’s present placement if family reunification services continue or while an adoption study is being done.”
 

 The department’s supplemental report filed July 9,1997, also reported the father had again threatened the foster mother. It stated: “On [June 8, 1997,] [children’s services worker] spoke with foster mother Nancy [S.] [Fjoster mother informed [children’s services worker] that she received a call from father ... on [June 7,1997.] [W]hen the call first started father asked about how his daughter was doing[.] [F]oster mother told father how minor was doing. Father then went into telling foster mother to call the social worker and to tell this [children’s services worker] that foster mother wants [children’s services worker] to move [Sabrina] to father’s brother in San Jose, CA. Father proceeded to tell foster mother that he isn’t making threats only promises. Father went on to tell foster mother he doesn’t want her to do anything in regards to keeping his daughter, not to apply for adoption, guardianship or foster care. Father let foster mother know he know[s] about how thing [szc] are on death ro[w] and they aren’t so bad. That he would return to prison and go on death ro[w] for murder. PH] He will get the address from his family and will take [the mother] and foster mother out to get his daughter and take he[r] to his brother in San Jose, it would be worth going back, to get his daughter away from strangers.” Nancy S. had filed a written
 
 *1007
 
 complaint with the sheriff’s department. She had also made security arrangements to protect herself and Sabrina and the two siblings.
 
 [4]
 

 A hearing was held on July 9, 1997. The matter was set for a contested hearing on August 12, 1997. The father was transferred to the Duell Vocational Institute in Tracy on August 5, 1997. Tracy is located 350 miles from Los Angeles. In a report filed on August 12,1997, the department continued to recommend termination of family reunification services and referral for adoption.
 

 The August 12 hearing was continued on the father’s motion. The father had not received notice of the proceeding. The matter was reset for a 12-month review hearing pursuant to section 366.21 on September 23, 1997. In a report filed on September 18, 1997, the department reported: “Since [June 13, 1996,] minor Sabrina has been in placement with foster mother Nancy [S.] and her two siblings, Ñola age 4 years who was adopted by at birth by [sz'c] Nancy [S.] and Miranda age 5 months who is in foster care also. During this time minor has bonded and has developed a strong attachment not only with the caretaker Nancy [S.], but with both her siblings also.”
 

 On September 23, 1997, the matter was reset for a contested 18-month hearing pursuant to section 366.22 on September 25, 1997. The continued hearing was held on September 25 and 26, 1997, more than 17 months after Sabrina was removed from her parents’ physical custody. Ms. Allen, a children’s services worker, testified she had received four or five letters from the father. When asked whether she had told the father what the case plan was, or what he was supposed to do, she stated, “I responded to that in the correspondence letter, and the court reports also shows what the case plan is.” She could not recall how many letters she had sent to the father. Ms. Allen recalled telling the father “about the domestic violence and the parenting classes and random drug testing and drug counseling.” She did not recall whether she had suggested the father look into the availability of necessary programs in prison. She recalled speaking to the father on the phone
 
 when he called her
 
 once, or maybe twice in 1996. The father never asked her to arrange “for [Sabrina] to be taken for a visit to see him at any of the facilities that he was at.” Ms. Allen was asked: “When a parent is incarcerated, what resources does the department have to assist the parent with reunification services?” She responded: “None that I am aware of.” Ms. Allen also testified the father had absconded with Sabrina to avoid her detention by the department and he had threatened the foster mother.
 

 
 *1008
 
 The father testified that when first incarcerated, in May 1996, he contacted Ms. Allen, the children’s services worker. He told her he “was going back up state” and “would like to be coming down to court hearings and be present in court . . . He also asked about taking custody of his daughter. Ms. Allen told him it “ ‘was not possible and [he] could not do that.’ ” In a letter he received in May 1996, Ms. Allen told the father what the requirements of his case plan were and that he had a year to comply. The father responded that he could not participate in prison programs because he was not put on the “main line.” The father encountered the same problem once placed at San Quentin prison. Alcoholics Anonymous (AA) and Narcotics Anonymous (NA) meetings were held at the prison on the “main line,” but the father was “in reception.” He advised Ms. Allen he could not participate in parenting or domestic violence classes, NA or AA because he “was not put on the main line” at San Quentin; rather, he was “at the other end of the prison.” Ms. Allen did not suggest any alternative things he could do. He did not ask her whether there were any alternatives. After the father was transferred from San Quentin to Tracy, a month and a half prior to the September 1997 hearing, there was a riot and the facility was locked down. As a result, the father could not participate in NA or AA meetings. The father further testified that he had written five or six letters to Ms. Allen but she had not responded. Also, he did not receive notices of hearings concerning his daughter and he missed two hearings while incarcerated. The father admitted he had taken Sabrina to Mexico in April 1996 because he “didn’t want [the department] to take her.” He admitted he had engaged in physical fights with the mother before Sabrina was bom, but denied there had been any such altercations after the child’s birth. He expected to be released from custody on October 30, 1997, more than 18 months after Sabrina was originally taken from her parents’ physical custody. He asked the court to give him another chance “to do these classes so I can get my daughter.” He testified “I’ll . . . try to do the classes.”
 

 The respondent court denied the father’s request to extend reunification services beyond the 18-month date. The respondent court concluded: Because Sabrina had been exposed to violent altercations between the parents (as alleged in the sustained section 300 petition), the father would be required to complete a 52-week domestic violence course; further, Sabrina had already been a ward of the court for 18 months; therefore, the best interests of the child required that a permanent plan be implemented. The respondent court found: Reasonable efforts to reunite Sabrina and her parents had been made; return of Sabrina to the physical custody of her parents would create a substantial risk of detriment; and Sabrina could or would be adopted. The respondent court ordered that: the department provide Sabrina and the parents with permanent placement services and she be referred for
 
 *1009
 
 adoptive planning. The matter was set for a section 366.26 hearing to be held January 22, 1998. The orders were entered on September 26, 1997, more than 17 months after Sabrina was removed from her parents’ physical custody. The father filed his notice of intent to file a writ petition three days later, on September 29, 1997. The petition for extraordinary writ was filed on October 27, 1997.
 

 III. Discussion
 

 The father contends the department failed to offer or provide reasonable reunification services. Specifically, it failed: to maintain monthly contact with him; to determine whether any programs were available to him while he was incarcerated; to offer him any alternatives; or to comply with his request that he be brought to court so he could participate in the proceedings.
 
 [5]
 
 The father asserts the court’s order setting the section 366.26 hearing and referring Sabrina for adoptive planning should be vacated, and the court ordered to extend reunification services to the father “to a reasonable date.” The department asserts the father’s inability to comply with his case plan was the result of his own criminal activity which “put him beyond the reach of any services that could have [been] offered to him.” We conclude: there was no substantial evidence reasonable reunification services were offered or provided to the father at any point during the reunification period; section 366.26, subdivision (c)(2), precludes termination of parental rights and adoption under those circumstances; and therefore, the trial court must
 
 *1010
 
 consider continuing the 18-month hearing pursuant to section 352. Further, on remand, if the father is then incarcerated, the court may exercise its discretion to determine whether offering reunification services would be detrimental to Sabrina as permitted by section 361.5, subdivision (e)(1). If a finding of detriment pursuant to section 361.5, subdivision (e)(1) is made, the respondent court may terminate reunification services and set the case for a hearing pursuant to section 366.26.
 

 A.
 
 Standard of Review
 

 The court’s finding reasonable reunification services had been offered or provided to the father is subject to review for substantial evidence.
 
 (In re Ronell
 
 A. (1996) 44 Cal.App.4th 1352, 1361-1362 [52 Cal.Rptr.2d 474];
 
 In re Precious J.
 
 (1996) 42 Cal.App.4th 1463, 1472 [50 Cal.Rptr.2d 385];
 
 In re Monica C.
 
 (1995) 31 Cal.App.4th 296, 306 [36 Cal.Rptr.2d 910];
 
 In re Misako R.
 
 (1991) 2 Cal.App.4th 538, 545 [3 Cal.Rptr.2d 217].) We must view the evidence in the light most favorable to the department and indulge all legitimate and reasonable inferences to uphold the order.
 
 (Ibid.)
 

 B.
 
 The Department’s Responsibility to Provide Reasonable Reunification Services to an Incarcerated Parent
 

 Family preservation is the first priority when dependency proceedings are commenced.
 
 (In re Precious J., supra,
 
 42 Cal.App.4th at p. 1472;
 
 In re Elizabeth R., supra,
 
 35 Cal.App.4th at p. 1787.) The Court of Appeal has held: “Reunification services implement ‘the law’s strong preference for maintaining the family relationships if at all possible.’ [Citation.]”
 
 (In re Elizabeth R., supra,
 
 35 Cal.App.4th at p. 1787;
 
 In re Precious J., supra,
 
 42 Cal.App.4th at p. 1472.) Therefore, reasonable reunification services must be offered to a parent.
 
 (Ibid.)
 
 The reunification plan is “a crucial part of a dispositional order.”
 
 (In re John B.
 
 (1984) 159 Cal.App.3d 268, 275 [205 Cal.Rptr. 321];
 
 Robin V.
 
 v.
 
 Superior Court
 
 (1995) 33 Cal.App.4th 1158, 1165 [39 Cal.Rptr.2d 743];
 
 In re Brittany S.
 
 (1993) 17 Cal.App.4th 1399, 1402 [22 Cal.Rptr.2d 50];
 
 In re Terry E.
 
 (1986) 180 Cal.App.3d 932, 947 [225 Cal.Rptr. 803].) The department must make a “ ‘ “good faith effort” ’ ” to provide reasonable services responsive to the unique needs of each family.
 
 (In re Precious J., supra,
 
 42 Cal.App.4th at p. 1472;
 
 In re Monica C., supra,
 
 31 Cal.App.4th at p. 306;
 
 In re Kristin W.
 
 (1990) 222 Cal.App.3d 234, 254 [271 Cal.Rptr. 629].) Moreover, the Court of Appeal has held: “[T]he plan must be specifically tailored to fit the circumstances of each family [citation], and must be designed to eliminate those conditions which led to the juvenile court’s jurisdictional finding. [Citation.]”
 
 (In re Dino E.
 
 (1992) 6
 
 *1011
 
 Cal.App.4th 1768, 1777 [8 Cal.Rptr.2d 416].) The effort must be made to provide reasonable reunification services in spite of difficulties in doing so or the prospects of success.
 
 (In re Elizabeth R., supra,
 
 35 Cal.App.4th at p. 1790;
 
 In re Brittany S., supra,
 
 17 Cal.App.4th at pp. 1406-1407;
 
 In re Dino E„ supra,
 
 6 Cal.App.4th at p. 1777.) The adequacy of the reunification plan and of the department’s efforts to provide suitable services is judged according to the circumstances of the particular case.
 
 (In re Ronell A., supra,
 
 44 Cal.App.4th at p. 1362;
 
 Armando L.
 
 v.
 
 Superior Court
 
 (1995) 36 Cal.App.4th 549, 554 [42 Cal.Rptr.2d 222];
 
 Robin V.
 
 v.
 
 Superior Court, supra,
 
 33 Cal.App.4th at p. 1164.) The Courts of Appeal have held: “[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained
 
 reasonable
 
 contact with the parents during the course of the service plan, and made
 
 reasonable
 
 efforts to assist the parents in areas where compliance proved difficult . . .
 
 (In re Riva M.
 
 (1991) 235 Cal.App.3d 403, 414 [286 Cal.Rptr. 592], original italics;
 
 In re Precious J., supra,
 
 42 Cal.App.4th at pp. 1474-1475;
 
 Armando L.
 
 v.
 
 Superior Court, supra,
 
 36 Cal.App.4th at pp. 554-555;
 
 Robin
 
 V. v.
 
 Superior Court, supra,
 
 33 Cal.App.4th at p. 1165.)
 

 With respect to an incarcerated parent, there is a statutory requirement that reunification services be provided “unless the court determines, by clear and convincing evidence, those services would be detrimental to the minor.” (§ 361.5, subd. (e)(1).)
 
 [6]
 
 There was no finding in this case reunification services would be detrimental to Sabrina; therefore, reasonable reunification services were required to be provided during the father’s incarceration. (§ 361.5, subd. (e)(1);
 
 In re Ronell A., supra,
 
 44 Cal.App.4th at p. 1362;
 
 In re Precious J., supra,
 
 42 Cal.App.4th at p. 1472;
 
 In re Brittany S., supra,
 
 17 Cal.App.4th at p. 1406.) Former section 361.5, subdivision (e)(1), provided in part: “[Reunification] services [provided to an incarcerated parent] may include, but shall not be limited to, all of the following: HO (A) Maintaining contact between parent and child through collect phone calls. [1 (B) Transportation services, where appropriate. [^Q (C) Visitation services, where appropriate. [^] (D) Reasonable services to extended family members or foster parents providing care for the child if the services are not detrimental to the child. [<fl] An incarcerated parent may be required to attend counseling, parenting classes, or vocational training programs as part of the service plan if these programs are available.”
 
 [7]
 
 This statute reflects a public policy favoring the development of a family reunification plan even when a
 
 *1012
 
 parent is incarcerated.
 
 (In re Terry E., supra,
 
 180 Cal.App.3d at pp. 948-949, fn. 6.) The department must preliminarily identify services available to an incarcerated parent.
 
 (In re Monica C., supra,
 
 31 Cal.App.4th at p. 307.) It cannot delegate to an incarcerated parent the responsibility for identifying such services.
 
 (Id.
 
 at pp. 307-308.) The department’s employees may not simply conclude that reunification efforts are not feasible on the sole ground the parent is incarcerated.
 
 (In re Elizabeth R., supra,
 
 35 Cal.App.4th at pp. 1791-1792;
 
 In re Terry E., supra,
 
 180 Cal.App.3d at pp. 947-948.)
 

 C.
 
 There Was No Substantial Evidence Reasonable Reunification Services Were Offered or Provided to the Father
 

 Viewing the evidence in the light most favorable to the department, we find insufficient evidence it offered or provided reasonable reunification services to the father in this case. As discussed above, the department was obligated to maintain reasonable contact with the father during the reunification period.
 
 (In re Precious J., supra,
 
 42 Cal.App.4th at pp. 1474-1475;
 
 Armando L.
 
 v.
 
 Superior Court, supra,
 
 36 Cal.App.4th at pp. 554-555;
 
 Robin
 
 V. v.
 
 Superior Court, supra,
 
 33 Cal.App.4th at p. 1165;
 
 In re Riva M., supra,
 
 235 Cal.App.3d at p. 414.) It was undisputed the department failed to meet its own commitment of maintaining monthly contact with the father. Moreover, the department failed to maintain reasonable contact with the father.
 
 (Robin V.
 
 v.
 
 Superior Court, supra,
 
 33 Cal.App.4th at pp. 1163, 1165-1166.) The father initiated contact with the department by telephone in May 1996. He was then incarcerated. There was also some evidence the father received correspondence from the department in May 1996 concerning the requirements of his reunification plan. Between May 1996 and December 1996, he wrote four letters to children’s services worker Ms. Allen. When viewed in a light most favorable to the order under review, his first three letters went unanswered. The children’s services worker finally wrote back to the father on December 31, 1996. In other words, the department made no effort to contact the father for at least seven months in 1996. The father thereafter received, at most, two additional letters from the department.
 
 [8]
 
 There was no evidence the department made
 
 any
 
 effort to contact the father after March 20,1997. The order from which this petition is taken was entered six months later, on September 26, 1997. In sum, during 13 months of the 17-month reunification period, the department failed to contact the father. Therefore, the department failed to maintain reasonable contact with the father during a significant portion of the reunification period.
 
 (In re Precious J., supra,
 
 42 CaI.App.4th at pp. 1474-1475;
 
 Armando L.
 
 v.
 
 Superior Court, supra,
 
 36
 
 *1013
 
 Cal.App.4th at pp. 554-555;
 
 Robin V.
 
 v.
 
 Superior Court, supra,
 
 33 Cal.App.4th at pp. 1165-1166;
 
 In re Riva M., supra,
 
 235 Cal.App.3d at p. 414.)
 

 Additionally, as discussed above, absent a finding of detriment, the department was required to offer or provide reasonable reunification services to the incarcerated father (§ 361.5, subd. (e)(1);
 
 In re Ronell A., supra,
 
 44 Cal.App.4th at p. 1362;
 
 In re Precious supra,
 
 42 Cal.App.4th at p. 1472;
 
 In re Monica C., supra,
 
 31 Cal.App.4th at pp. 305, 307-308;
 
 In re Brittany S., supra,
 
 17 Cal.App.4th at p. 1406), despite difficulties in doing so or the prospects of success.
 
 (In re Elizabeth R., supra,
 
 35 Cal.App.4th atp. 1790;
 
 In re Brittany S., supra,
 
 17 Cal.App.4th at pp. 1406-1407;
 
 In re Dino E., supra,
 
 6 Cal.App.4th at p. 1777.) It was undisputed the father was incarcerated “before [the department] could provide him with referrals.” It was also undisputed the department made
 
 no
 
 effort to determine whether any services were available or could be provided to the incarcerated father. The department never contacted any institution to determine the availability of services to the father. The children’s services worker, Ms. Allen, could not even recall whether she had suggested the father look into the availability of appropriate programs in prison. If, as the father testified, no services were available to him in prison (because of the manner in which he was housed), his inability to participate was not the department’s fault. (Cf.
 
 In re Ronell A., supra,
 
 44 Cal.App.4th at p. 1363 [child protective services agency made regular efforts to insure incarcerated mother was attending classes].) The prisons are run by the Department of Corrections, not by the department.
 
 (Ibid.)
 
 However, the department should, at a minimum, have contacted the relevant institutions to determine whether there was any way to make services available to the father. (Cf.
 
 Ibid,
 
 [“department made repeated efforts to assure mother” attended required classes];
 
 In re Brittany S., supra,
 
 17 Cal.App.4th at pp. 1403, 1407 [department failed to monitor mother’s progress in prison programs or to ask someone at the Department of Corrections about a community treatment program in which the mother sought to participate].) In other words, while the department cannot tell prison officials how to run their institutions, it can: notify the prison an incarcerated parent is in need of reunification services; determine whether any appropriate services are available at the particular institution in question; and explore whether changes in the housing of the parent prisoner can be made to facilitate the provision of such services consistent with legitimate prison and public safety concerns. The department does not meet its obligations when, as here, it simply concludes: The father is in prison; he knows what the requirements of his case plan are; he was imprisoned before any referrals were made; he says no services are available to him; and being unaware of any resources to assist the incarcerated parent with reunification, the department need not take any action to facilitate the reunification process.
 

 
 *1014
 
 The father was not required to complain about the lack of reunification services as a prerequisite to the department fulfilling its statutory obligations. The department must offer or provide reasonable reunification services to an incarcerated parent. (§ 361.5, subds. (a) & (e)(1);
 
 In re Elizabeth R., supra,
 
 35 Cal.App.4th at p. 1791;
 
 In re Monica C., supra,
 
 31 Cal.App.4th at pp. 305, 307-308.) The department is not relieved of that responsibility because the parent did not request services.
 
 (Robin V.
 
 v.
 
 Superior Court, supra,
 
 33 Cal.App.4th at pp. 1165-1166;
 
 In re Monica C., supra,
 
 31 Cal.App.4th at pp. 307-308.) As the Court of Appeal held in the case of
 
 In re Monica C., supra,
 
 31 Cal.App.4th at pages 307-308: “Section 361.5, subdivision (a), places on the agency the duty to provide services to the parent ‘for the purpose of facilitating reunification of the family’; the discharge of this duty obviously entails the preliminary task of identifying services available to [an incarcerated] parent. By requiring [the mother] to perform this preliminary task, the [department] evaded its statutory obligation to provide reunification services.”
 

 In addition, although the department was aware the father was incarcerated, his case plan was not adjusted to reflect that fact.
 
 (In re Brittany S., supra,
 
 17 Cal.App.4th at pp. 1402-1403, 1406-1407.) The case plan at all times called for the father to participate in programs which were unavailable to him. There is no substantial evidence any alternatives were ever considered or investigated. The case plan at all times called for monitored visitation between Sabrina and the father. There is no substantial evidence the department ever considered visitation. The department’s six-month judicial review report stated the father had not participated in the development of his case plan because he was incarcerated. There is no substantial evidence the father’s incarceration prevented the department from communicating with him regarding the nature and terms of his case plan. The department also failed to facilitate the father’s presence at two hearings. It was undisputed the department failed to timely process an order for removal of the father from prison, resulting in his inability to attend the six-month review hearing. The father did not receive notice of the hearing set for August 12, 1997, resulting in a continuance of that hearing.
 

 We recognize that the prospects of successfully reunifying Sabrina and her father were dim. The father’s criminal history, his drug abuse, his domestic violence (which he denied had occurred or blamed on the mother), and his threats to kill others, compounded by his incarceration, left little hope of successful reunification efforts. Further, the father had fled to Mexico with Sabrina to avoid her detention. During that time, he had failed to secure medical treatment for her viral infection. However, the department is not excused from offering or providing court-ordered
 
 *1015
 
 reasonable reunification services because of difficulties in doing so or the prospects of success.
 
 (In re Elizabeth R., supra,
 
 35 Cal.App.4th at p. 1790;
 
 In re Brittany S., supra,
 
 17 Cal.App.4th at pp, 1406-1407;
 
 In re Dino E., supra,
 
 6 Cal.App.4th at p. 1777.) In this case, the department failed to make any effort to reunify the incarcerated father and his daughter. Further, the respondent court failed to order the department to do so. We conclude, under these circumstances, the respondent court is barred by law from terminating the father’s parental rights and placing Sabrina for adoption, and must consider continuing the 18-month hearing. Alternatively, on remand, if the father is incarcerated, the court may find, under section 361.5, subdivision (e)(1), that offering reunification services would be detrimental to Sabrina.
 

 D.
 
 The Trial Court Must Consider Continuing the 18-month Hearing Pursuant to Section 352 or Make a Proper Finding of Detriment Pursuant to Section 361.5, Subdivision (e)(1)
 

 The 18-month hearing represents a critical juncture in dependency proceedings.
 
 (In re Ronald R.
 
 (1995) 37 Cal.App.4th 1186, 1195 [44 Cal.Rptr.2d 22];
 
 In re Elizabeth R., supra,
 
 35 Cal.App.4th at p. 1788.) At the 18-month hearing “critical” decisions concerning parental rights are made.
 
 (In re Matthew C.
 
 (1993) 6 Cal.4th 386, 396 [24 Cal.Rptr.2d 765, 862 P.2d 765], citing
 
 Cynthia D.
 
 v.
 
 Superior Court
 
 (1993) 5 Cal.4th 242, 250 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) The Court of Appeal has held: “The Legislature has determined that the juvenile court must embrace or forsake family preservation at this point by circumscribing the court’s options.”
 
 (In re Elizabeth R., supra,
 
 35 Cal.App.4th at p. 1788.) The minor must either be returned to the physical custody of his or her parent or the court must terminate reunification services and set a hearing for the selection and implementation of a permanent plan. Pursuant to section 366.22, subdivision (a), if Sabrina is not returned to a parent, the following is required: “[T]he court
 
 shall
 
 develop a permanent plan. The court
 
 shall
 
 order that a hearing be held pursuant to Section 366.26 .... The hearing
 
 shall
 
 be held no later than 120 days from the date of the 18-month hearing. The court
 
 shall
 
 also order termination of reunification services to the parent. . . . The court
 
 shall
 
 determine whether reasonable services have been offered or provided to the parent or guardian.” (Italics added.) Section 366.22, subdivision (a), does not give the juvenile court the option to continue reunification services nor does it specifically prohibit the court from ordering a section 366.26 hearing even if it finds reasonable reunification services have not been
 
 *1016
 
 provided to a parent.
 
 (In re Elizabeth R., supra,
 
 35 Cal.App.4th at pp. 1788-1789;
 
 In re Dino E., supra,
 
 6 Cal.App.4th at p. 1778.)
 
 [9]
 

 To complicate matters, this case falls within the proscription of section 366.26, subdivision (c)(2). That statute precludes termination of parental rights when, as here, the department has failed to offer or provide reasonable reunification services to a parent throughout the reunification period. Section 366.26, subdivision (c)(2) provides: “The court shall not terminate parental rights if at each and every hearing at which the court was required to consider reasonable efforts or services [i.e., the 6-, 12-, and 18-month hearings], the court has found that reasonable efforts were not made or that reasonable services were not offered or provided.” There was no substantial evidence that at any of the relevant hearings specified in section 366.26, subdivision (c)(2), any reasonable reunification services were offered or provided to the father. Further, in the present case, adoption is the intended permanent plan. Yet, the respondent court will be precluded from implementing that plan by section 366.26, subdivision (c)(2), because there is no substantial evidence reasonable reunification services were ever offered or provided to the father.
 

 Courts of Appeal have held the Legislature never intended a strict enforcement of the 18-month limit to override all other concerns including preservation of the family when appropriate.
 
 (In re David D.
 
 (1994) 28 Cal.App.4th 941, 955-956 [33 Cal.Rptr.2d 861];
 
 In re Daniel G.
 
 (1994) 25 Cal.App.4th 1205, 1214 [31 Cal.Rptr.2d 75];
 
 In re Dino E., supra, 6
 
 Cal.App.4th at p. 1778.) The Courts of Appeal have held the answer to the present dilemma is found in section 352, which authorizes a continuance of
 
 any
 
 hearing upon a showing of good cause. Section 352 states: “Upon request of counsel ... the court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required
 
 *1017
 
 to be held, provided that no continuance shall be granted that is contrary to the interest of the minor. In considering the minor’s interests, the court shall give substantial weight to a minor’s need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements. [*]D Continuances shall be granted only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance. . . .” (§ 352.) A juvenile court has discretion to continue an 18-month hearing pursuant to section 352 when, as here, no reasonable reunification services have ever been offered or provided to a parent.
 
 (In re Elizabeth R., supra, 35
 
 Cal.App.4th at pp. 1797-1799 [parent hospitalized for mental illness for most of the reunification period and had substantially complied with reunification plan];
 
 In re Dino E., supra,
 
 6 Cal.App.4th at p. 1778 [no reunification plan was ever developed for the father].)
 
 [10]
 
 The juvenile court may do so on its own motion.
 
 (In re Elizabeth R., supra,
 
 35 Cal.App.4th at p. 1798;
 
 In re Dino E., supra,
 
 6 Cal.App.4th at p. 1779.) In exercising its discretion, the juvenile court should consider: the failure to offer or provide reasonable reunification services; the likelihood of success of further reunification services; whether Sabrina’s need for a prompt resolution of her dependency status outweighs any benefit from further reunification services; and any other relevant factors the parties may bring to the court’s attention.
 
 (In re Dino E., supra,
 
 6 Cal.App.4th at pp. 1779-1780.)
 

 In the present case, there was no finding that reunification services should not be provided because they would be detrimental to the minor pursuant to section 361.5, subdivision (e)(1). The respondent court denied the father’s request to extend the reunification period and, in his words, “give me another chance to do these classes so I can get my daughter.” The respondent court concluded: because Sabrina had been exposed to violent altercations between the parents (as alleged in the section 300 petition and sustained), the father would be required to complete a 52-week domestic violence course; further, Sabrina had already been a dependent of the court for 18 months;
 
 *1018
 
 therefore, the best interests of the child required that a permanent plan be implemented. In reaching that decision, the respondent court was under the erroneous assumption reasonable reunification services
 
 had
 
 been offered or provided to the father. Furthermore, the respondent court was not then aware that it would be precluded from terminating the father’s parental rights and proceeding with the intended plan of adoption. On remand, the court shall take the matters discussed above into consideration in exercising its discretion under section 352.
 

 Alternatively, on remand, if the father is then incarcerated the court may determine pursuant to section 361.5, subdivision (e)(1), and conclude on a showing of clear and convincing evidence, that providing reunification services would be detrimental to Sabrina. There is an abundance of evidence that requiring Sabrina to participate in reunification services would be detrimental to her. However, it is the trial court which must in the first instance make this determination. If a finding is made pursuant to section 361.5, subdivision (e)(1), that reunification services would be detrimental to Sabrina, then the respondent court may reissue its order pursuant to section 366.22 and proceed to the section 366.26 hearing.
 

 We do not reach the question whether a finding of detriment pursuant to section 361.5, subdivision (e)(1), would avoid the proscription of section 366.26, subdivision (c)(2). In other words, we do not decide whether subdivision (c)(2) of section 366.26, precluding termination of parental rights when no reunification services have been offered or provided to a parent, applies upon a finding of detriment pursuant to subdivision (e)(1) of section 361.5. That question has not been raised or determined in the trial court. Moreover, it has not been briefed on appeal. We recognize an intelligent argument could be made that the dependency law, interpreted as a whole
 
 (Phelps
 
 v.
 
 Stostad
 
 (1997) 16 Cal.4th 23, 32 [65 Cal.Rptr.2d 360, 939 P.2d 760];
 
 DuBois
 
 v.
 
 Workers’ Comp. Appeals Bd.
 
 (1993) 5 Cal.4th 382, 388 [20 Cal.Rptr.2d 523, 853 P.2d 978]), and read to avoid an absurd result
 
 (Mercy Hospital & Medical Center
 
 v.
 
 Farmers Ins. Group of Companies
 
 (1997) 15 Cal.4th 213, 219 [61 Cal.Rptr.2d 638, 932 P.2d 210];
 
 People
 
 v.
 
 King
 
 (1993) 5 Cal.4th 59, 69 [19 Cal.Rptr.2d 233, 851 P.2d 27]), does not prevent adoption as a permanent plan when a finding of detriment is made under section 361.5, subdivision (e)(1); the Legislature, by allowing a judge to not order reunification services (§ 361.5, subd. (e)(1)), could not have intended the minor in question could never be adopted.
 

 IV. Disposition
 

 Let a peremptory writ of mandate issue, directing the respondent court to vacate its September 26, 1997, order terminating reunification services and
 
 *1019
 
 setting a hearing under Welfare and Institutions Code section 366.26. The respondent court shall hold a Welfare and Institutions Code section 366.22 hearing within 30 days of the filing date of this opinion and proceed as indicated heretofore. This opinion is final forthwith pursuant to rule 24(d) of the California Rules of Court.
 

 Grignon, J„ and Jackson, J.,
 
 *
 
 concurred.
 

 [1]
 

 All further statutory references are to the Welfare and Institutions Code unless otherwise noted.
 

 [2]
 

 Seventeen months later, on September 26, 1997, during the eighteen-month hearing, the father denied he had beaten the mother. The father testified there had not been any physical altercations between the parents after Sabrina was bom.
 

 [3]
 

 The form letter contained a paragraph which read: “Please inform me of your participation in any counseling and/or drug program. Also sign the authorization for release of information which will enable me to talk with your counselor. Send me your counselor’s name. Thank you.” The paragraph was
 
 not
 
 checked off to indicate its applicability to the father.
 

 [4]
 

 A sibling bom after Sabrina N.’s detention had also been placed with Nancy S.
 

 [5]
 

 The father has not raised any issue as to the lack of visitation or the department’s failure to investigate his brother’s home for possible placement. With respect to visitation, his counsel conceded in the respondent court that “. . . in this instance visitation was not feasible because father was incarcerated more than 350 miles away for most of the time of this reunification period.” We note, however, that the department made no effort to determine whether the foster mother or a relative was available to transport Sabrina to the prison for visitation. Further, the department made no efforts to provide visitation during periods of time, however brief, when the father was housed locally. Indeed, the record does not reflect the department ever considered visitation at all, or if it did, the basis upon which the father was denied the opportunity to be in Sabrina’s presence.
 
 (In re Elizabeth R.
 
 (1995) 35 Cal.App.4th 1774, 1791 [42 Cal.Rptr.2d 200].) At the 18-month hearing, counsel for the department took the position there was no obligation to explore visitation. This it asserts was because the court never specifically ordered the department to do so. With respect to relative placement, the department did not consider placement with the father’s brother because, in the year since Sabrina had been detained, “. . . there ha[d] been no visitation or calls to establish a relationship with minor.” (See § 361.3, subd. (d).) By the time the paternal uncle expressed an interest in Sabrina, the department understandably may have been reluctant to consider moving the then 17-month-old minor from a stable environment in which she had lived, with a sibling, since 3 months of age. The decision not to attempt placement with the paternal uncle was reasonable given: the lateness of the date on which the paternal uncle expressed a desire to adopt Sabrina; the stability of the child’s current placement; and the lack of a relationship between the uncle and Sabrina.
 
 (In re Joshua M.
 
 (1997) 56 Cal.App.4th 801, 809 [65 Cal.Rptr.2d 748].)
 

 [6]
 

 As will be noted, the trial court on remand may make such a finding if the father is then incarcerated.
 

 [7]
 

 Nonsubstantive amendments to section 361.5, subdivision (e)(1), were made in 1996, effective January 1, 1997. (Stats. 1996, ch. 1083, § 2.5.)
 

 [8]
 

 There was evidence some “materials” were returned to the department from San Quentin prison and later forwarded to the Duell Vocational Institute facility in Tracy.
 

 [9]
 

 Prior to 1992, the first sentence of the second paragraph of subdivision (a) of section 366.22 read: “If the minor is not returned to a parent or guardian at the 18-month hearing and the court determines that reasonable services have been offered or provided to the parent or guardian, the court shall develop a permanent plan.” (Stats. 1988, ch. 1075, § 5, p. 3471.) In 1991, the language requiring the court to determine whether reasonable services had been offered or provided was moved from the opening sentence and made a separate sentence at the end of the paragraph. (Stats. 1991, ch. 820, § 4, p. 3647.) The Legislative Counsel’s Digest explained the prnpose of the amendment as follows: “This bill would require a court to determine whether reasonable services have been offered or provided to the parent or guardian
 
 but would delete that requirement as a precondition for developing a permanent
 
 plan(Legis. Counsel’s Dig., Sen. Bill No. 475 (1991-1992 Reg. Sess.) Summary Dig., p. 352, italics added.) Even if the statute could be read, prior to 1992, as requiring a finding reasonable services had been offered or provided as a prerequisite to ordering a section 366.26 hearing, the 1991 amendment makes it clear the finding is no longer a precondition to moving to the permanent placement stage.
 

 [10]
 

 We respectfully disagree with
 
 In re Daniel G., supra, 25
 
 Cal.App.4th at pages 1211-1215, insofar as it holds the juvenile court has discretion under section 366.22, subdivision (a), at the 18-month review stage, not to order a section 366.26 hearing if it finds reasonable reunification services have not been offered or provided. The Legislature has clearly expressed its intention a finding of reasonable services offered or provided is
 
 not
 
 a precondition to ordering a section 366.26 hearing. The statutory language is clear and mandatory. If the minor is not returned to the parent, “[t]he court
 
 shall
 
 order that a hearing be held pursuant to Section 366.26” within 120 days, and
 
 “shall
 
 also order termination of reunification services.” (§ 366.22, subd. (a), italics added.) We conclude the discretion lies, instead, in granting a continuance of the 18-month hearing pursuant to section 352.
 
 (In re Elizabeth R., supra,
 
 35 Cal.App.4th at pp. 1797-1799;
 
 In re Dino E„ supra,
 
 6 Cal.App.4th at pp. 1778-1780.)
 

 *
 

 Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.