Filed 1/21/15  In re N.M. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re N.M., a Person Coming Under the Juvenile Court Law. | |
| R.M., Petitioner, v. THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent; ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Real Party in Interest. | A143244 (Alameda  County Super. Ct. No. HJ11016291) |

## I.

## INTRODUCTION

By a petition for extraordinary writ, R.M. (Father) challenges an order made after an 18-month permanency review hearing terminating family reunification services and setting a permanency plan hearing under Welfare and Institutions Code section 366.26[1] for his six-year-old daughter N.M. (the minor).  The hearing is set for January 26, 2015. Father contends: (1) the Alameda County Social Services Agency (the Agency) failed to make reasonable efforts to provide him family reunifications services during his

---

[1] All statutory references are to the Welfare and Institutions Code.

1

incarceration; and (2) the court erred in failing to extend reunification services. We deny Father's petition.

## II.

## FACTS AND PROCEDURAL HISTORY

The parties have set out the details of the these proceedings at considerable length. We recite the facts and procedural history in abbreviated form, leaving out all nonessential facts with respect to the minor's mother, who is not a party to this writ petition.

The then-three-year-old minor was made a dependent of the juvenile court after her parents tried to flee on foot from a stolen vehicle following a police pursuit that ended in a collision. Both parents were arrested for parole and probation violations, stealing a car, and for being in possession of a firearm. The minor's parents had prior criminal histories and substance abuse issues. They also had a history of leaving the minor with multiple caretakers without making formal plans. At the contested jurisdiction/disposition hearing on January 18, 2013, the court took jurisdiction over the minor and found Father to be the minor's presumed father. The court ordered that both parents receive reunification services.

The Agency's "Status Review Report" prepared for the six-month review hearing indicated that Father was in minimal compliance with his case plan because he was incarcerated. Although Santa Rita Jail, where Father was incarcerated at the time, offered many programs, Father had to be isolated from other inmates because he was a former gang member. As a result, he was not able to participate in any of the programs available at the facility. The court received the Agency's report into evidence, found that reasonable services had been provided by the Agency, and extended family reunification services to the parents.

At the 12-month report and review hearing, the Agency recommended that Father's reunification services be terminated and that a permanent planning hearing be set. At the contested hearing, the Agency's social worker testified that after Father left Santa Rita Jail, he was transferred to three different facilities. The social worker admitted

2

she had not yet had an opportunity to contact the counselor at Father's current facility to determine whether there were programs that could help him engage in his case plan. The court decided not to follow the Agency's recommendation to terminate Father's reunification services, and instead extended reunification services to Father, finding he had not received reasonable reunification services. However, the court found that reasonable services had been provided to the minor's mother and terminated her reunification services.

Commencing on March 6, 2014, the court heard argument on the matter of visitation between the minor and Father, who was still incarcerated. Over Father's objection, the court found that visitation between the minor and Father would be detrimental based on the minor's "age (5), the distance the child will have to travel for these visits (approx 6 hours of travel time) and the uncertain amount of visitation time available."

At the 18-month report and review hearing, the Agency recommended that Father's reunification services be terminated and that a permanency planning hearing be set. The permanent plan for the minor was continued placement with her maternal aunt and uncle, who were willing to become her legal guardians. The Agency's report indicated Father was in partial compliance with his case plan. While incarcerated, Father had participated in the programs that were offered. However, Father had not participated in an inpatient substance abuse program or domestic violence counseling, which were two critical components of his case plan, because these programs were not available at the facility where he was incarcerated.

Father testified at the contested 18-month review hearing held on September 23, 2014. He had just been released from prison on July 23, 2014. He testified that he participated in the following programs while incarcerated: mental health services, a parenting class that he was able to complete, and drug testing. Father also testified that he completed a 12-week anger management class, even though it was not a part of his case plan. Father testified that he did not want to enter an inpatient substance abuse treatment program because doing so would "hinder [his] opportunity to be able to work

3

and create a foundation," which he believed was necessary "to get [his] daughter back." Father also admitted he had not started a domestic violence program because he had "a lot on [his] plate."

The court issued its decision on October 2, 2014, observing Father is "articulate, he's intelligent, and he is sincere about wanting to reunify with his daughter." However, the court pointed out that Father "was just released from prison 71 days ago. He just started working on his case plan to deal with the domestic violence and the substance abuse problems . . . ." The court decided not to extend services to the statutory 24-month maximum, which was only 31 days later. The court indicated "there has just not been enough time for the father to satisfy his requirements before the 24-month review." The court terminated reunification services and scheduled a section 366.26 hearing for January 26, 2015.

Father then filed this writ petition, seeking to set aside the orders made at the contested 18-month review hearing and requesting a stay of the upcoming permanent planning hearing. The Agency has filed opposition to Father's petition.

## III.

## DISCUSSION

### A.  Reasonable Reunification Services Were Provided to Father

Father contends there was insufficient evidence to support the court's finding that the Agency provided him reasonable reunification services during his incarceration.

Section 361.5 governs the provision of reunification services. Regarding incarcerated parents, it states in relevant part: "If the parent or guardian is incarcerated [or] institutionalized, . . . the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child." (§ 361.5, subd. (e)(1).) "In determining the content of reasonable services, the court shall consider the particular barriers to an incarcerated . . . parent's access to those court-mandated services and ability to maintain contact with his or her child, and shall document this information in the child's case plan." (*Ibid.*) "An incarcerated parent may be required to attend counseling, parenting classes, or vocational training programs as

4

part of the reunification service plan if actual access to these services is provided." (*Ibid.*)

This court reviews the juvenile court's finding that reasonable reunification services were provided or offered to a parent under the substantial evidence standard. (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1010 (*Mark N.*).) Thus, we view the evidence in the light most favorable to the Agency. (*Ibid.*) "[The Agency] 'must make a good faith effort to develop and implement a family reunification plan. [Citation.] "[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . ." [Citation.]' [Citation.] 'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' [Citation.]" (*In re T.G.* (2010) 188 Cal.App.4th 687, 697.)

Here, the Agency identified the problems leading to the minor's dependency, including Father's criminal background and chronic substance abuse, and the Agency devised a case plan to remedy these problems, which included inpatient drug treatment, counseling, parenting education, and domestic violence classes.

Of the services that were available to Father while incarcerated, Father had participated in random drug tests, which were all clean. Father also enrolled in counseling and completed coursework in anger management. The social worker also sent parenting workbooks to Father, which he completed and returned to the social worker while incarcerated. Father testified that while he was incarcerated he completed a parenting course, mental health evaluation, anger management class, therapy and drug testing. Prior to Father's release, the social worker sent Father information on a domestic violence program, substance abuse programs, as well as the contact information for a case manager at the drug court who might be able to help in finding suitable programs.

5

While Father took advantage of the limited services offered to him in prison, and he should be commended for doing so, his lengthy incarceration prevented him from addressing many of the serious problems that led to the minor's dependency. He faults the Agency for failing to "assist him in finding ways to meet his case plan" while he was in custody. However, courts have recognized that incarceration limits the reunification services that social workers can offer because the social services agency has no control over the services available within a custodial facility. (See *Mark N.*, *supra*, 60 Cal.App.4th at p. 1013; *In re Lauren Z.* (2008) 158 Cal.App.4th 1102, 1111 [social worker could do no more for incarcerated mother than contact her by letter and telephone and explain "the types of programs she could search for in prison"].) The programs available to state prisoners are typically what the prison provides. All a social worker can reasonably do is to learn what programs are available where an incarcerated parent is housed, and encourage the parent to take advantage of them. (*Mark N.*, *supra*, at p. 1013.) The social worker in this case fulfilled her obligation by sending Father numerous letters setting out all of the services that were available to him at the prison and encouraging him to take advantage of them.

In attempting to pinpoint exactly what additional steps the Agency's social worker could have taken to assist Father in complying with his court-ordered reunification plan during his lengthy period of incarceration, Father complains he was not provided visitation with the minor. He claims his ability to reunify with the minor was hampered because "visitation was not given even one chance in 22 months of incarceration . . . ." To the extent Father implies the Agency was legally obligated to arrange visitation between him and the minor, he is mistaken. Under section 361.5, subdivision (e)(1), the Agency may offer visitation for an incarcerated parent "where appropriate." After a contested hearing, the trial court held visitation was not appropriate because of the minor's "age (5), the distance the child will have to travel for these visits (approx 6 hours of travel time) and the uncertain amount of visitation time available." In light of the court's findings, which were never timely challenged, Father made a good faith attempt to forge a relationship with the minor through sending her letters. Given Father's place

of incarceration, this was the best the Agency could do.  (See *In re Brittany S.* (1993) 17 Cal.App.4th 1399, 1407, fn. 8 ["limiting contact to letters and telephone calls may well be appropriate where the parent is incarcerated some distance from where the minor resides"].)

Following Father's release from custody on July 23, 2014, more opportunities were available to fulfill the requirements of Father's case plan, although by this time the statutory period for reunification was clearly running out.  The social worker contacted Father's parole agent and explained the requirements of Father's case plan to him.  The social worker and Father's parole agent discussed appropriate programs that would help Father complete his case plan.  Therapeutic visitation with the minor was initiated and was going well.  The Agency provided Father with referrals for residential programs to address his drug addiction and referrals for parenting classes, but as Father acknowledged during his testimony at the 18-month hearing, he had not yet availed himself of those programs.

When this record is reviewed, substantial evidence supports the juvenile court's finding that the reunification services the Agency provided to Father were reasonable given the circumstances.  In reviewing an almost-identical case, the court in *Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, held:  "Father's case plan was the best it could be given his location and the length of his prison sentence.  Father, not [the Agency], created these circumstances.  He engaged in criminal activity . . . knowing he had a child to provide for and protect."  (*Id.* at p. 1032.)

## B.  Extension of Reunification Services

Father next complains the juvenile court's refusal to extend services beyond the 18-month review hearing was an abuse of discretion.  He argues he "was not given reasonable services in the beginning of this case as found by the court . . . .  Extending service[s] to the 24 month mark will put father that much closer to him being able to have his daughter come home."

The juvenile court may extend reunification services beyond 18 months from the date of initial removal, to "a maximum time period not to exceed 24 months after the date

7

the child was originally removed from physical custody of his or her parent . . . if it is shown . . . that the permanent plan for the child is that he or she will be returned and safely maintained in the home within the extended time period.  The court shall extend the time period only if it finds that . . . there is a substantial probability that the child will be returned to the physical custody of his or her parent . . . within the extended time period, or that reasonable services have not been provided to the parent or guardian." (§ 361.5, subd. (a)(4).)

The statutory scheme also contemplates the extension of services at an 18-month review hearing for up to 24 months to accommodate some incarcerated parents.  (§ 361.5, subd. (a)(4).)  Such an extension depends on several findings, including "clear and convincing evidence that the best interests of the child would be met by the provision of additional reunification services to . . . a parent recently discharged from incarceration, institutionalization, or the custody of the United States Department of Homeland Security" who is "making significant and consistent progress in establishing a safe home for the child's return . . . ."  (§ 366.22, subd. (b).)  However, section 366.22 specifies that the permanency review hearing may not be held more than 24 months after the date the child was originally removed from the parents' custody.  (§ 366.22, subd. (b).)

As was recently pointed out in *San Joaquin Human Services Agency v. Superior Court* (2014) 227 Cal.App.4th 215, 223, these two statutes have a common requirement. "[P]ursuant to sections 361.5, subdivision (a)(4) and 366.22, subdivision (b), reunification services could be extended *only* if the juvenile court found a substantial probability the minor would be returned and safely maintained in the home within the extended time period."  (*Id.* at p. 223, italics omitted.)  No such finding was made in this case, and for good reason.

As the trial court noted, extending reunification services to the Father to the 24-month deadline would only give him an additional 31 days of services.  The court found because Father "essentially just start[ed] to deal with [his substance abuse and domestic violence] issues" approximately 21 months after he started receiving reunification services, there was "not a substantial probability that [the minor] would be returned to

8

[Father] by the 24-month hearing date." On this record, the court's denial of an extension of reunification services was fully supported by the evidence.

## IV.

## DISPOSITION

The petition for extraordinary writ is denied. The request for a stay is denied. Pursuant to California Rules of Court, rule 8.264(b)(3), this opinion is made final forthwith.

_____
RUVOLO, P. J.

We concur:


_____
REARDON, J.


_____
RIVERA, J.