Filed 2/3/16  D.B. v. Superior Court CA4/2

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| D.B., | |
| Petitioner, | E064644 |
| v. | (Super.Ct.No. RIJ1300785) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Jacqueline C. Jackson, Judge.  Petition denied.

Phillip Malisos for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

1

**FACTUAL AND PROCEDURAL HISTORY**

On July 18, 2013, real party in interest Riverside County Department of Public Social Services (DPSS) filed a section 300 petition pursuant to Welfare and Institutions Code[1] section 300, subdivision (b), on behalf of A.B. (minor; a boy born June 2013) because of the substance abuse issues of D.B. (father) and D.K. (mother[2]; collectively, "parents"), parents' transient lifestyle, parents' criminal histories, and mother's involvement in domestic violence with her current boyfriend. The juvenile court made temporary removal findings and set the case for a jurisdictional/dispositional hearing. Parents were referred to Family Preservation Court, an intensive year-long substance abuse treatment program.

The social worker recommended at the jurisdictional/dispositional hearing that parents be offered six months of reunification services. A case plan for reunification was approved and parents were authorized liberal visitation, to include increased supervised, unsupervised, overnight, and weekend visits, as well as return upon case plan compliance. A section 366.21, subdivision (e) hearing was set for February 18, 2014.

At the section 366.21, subdivision (e) review hearing, social worker Bettina Harding recommended termination of services to parents and the setting of a selection and implementation hearing in 120 days. Father had started Hope House, which was a residential substance abuse treatment program, but left after a brief stay. He then became

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Mother is not a party to this petition.

2

incarcerated on October 31, 2013. Father was released in January 2014 and reentered Hope House. Parents' counsel set the matter for a contested hearing on March 18, 2014. At the contested review hearing, reunification services were terminated as to both parents, and a section 366.26 hearing was set for July 16, 2014.

Although minor's foster mother cared for him, she was unable to commit to adoption as a permanent plan. Therefore, on July 3, 2014, DPSS filed a report requesting a continuance of the July 16, 2014, section 366.26 hearing for 180 days to find an adoptive home for minor. The report for the hearing also noted that father was having weekly supervised visits with minor, holding him, and playing with him. The day before the July 16 hearing, father's counsel filed a request to change court order in light of the fact that there was no adoptive home available for minor. Father had actively participated in Family Preservation Court, had given consistently negative random tests, and was participating in anger management and parenting classes. Father was also consistent with his visitation with minor, and the visits were perceived as positive. Father requested the court vacate the section 366.26 hearing and grant him six months of reunification services. At the hearing on July 16, 2014, the court continued the section 366.26 hearing to, and set a hearing on father's request to change a court order for August 20, 2014.

On August 20 the court continued the section 366.26 hearing to, and ordered a hearing on father's request to change court order for September 25, 2014.

On September 18, 2014, Harding filed an addendum report for the section 366.26 hearing. The social worker continued to recommend parents' rights be terminated as to

3

minor. Father provided documentation that he had completed phases I and II of the Family Preservation Court, as well as the Nurturing Families program. Father also provided his client plan treatment report regarding his progress on his substance abuse treatment goals, and a recent pay stub. Harding stated that, although father was participating in services and had been sober for nine months, it would be a risk to grant reunification services to him. She stated that the "ability, willingness and having the capacity to parent is something that should always be taken into consideration when it come[s] to the life of a child." She went on to state that the prospective adoptive parent was "willing and has the capacity . . . to do so. The prospective adoptive parent also has her extended family that is willing to provide support."

At the hearing, the juvenile court and counsel for the parties met and held an off-the-record discussion. The court found good cause to continue the matter and increased father's visits to two times per week. The case was continued to November 5, 2014.

On October 30, 2014, social worker Harding filed an addendum for the November 5 hearing. She continued to request that parental rights be terminated. Harding made requests to father's providers regarding his progress in services but did not receive any responses. Harding also noted that there were some canceled visits between father and minor; she acknowledged that some visits were canceled by the foster/prospective adoptive parent C.M., as well as father. Harding still recommended adoption by C.M. At the hearing, the court found that there was a substantial change in circumstances and that it was in minor's best interests to grant father's request to change court order. The court ordered six months of reunification services to father. The court also authorized father to

4

reside in paternal grandfather's home, and liberalized visitation. A case plan was ordered to be submitted within 10 days. The court set a section 366.22 hearing.

On November 13, 2014, father's reunification plan was filed. The plan included counseling if appropriate, a parenting education program, completion of the substance abuse treatment program through Family Preservation Court, and random drug testing. All parties submitted on this plan.

The court set an interim hearing regarding the assessment of the paternal grandparents for placement. The home evaluation process was completed but the home was unable to be certified. The court confirmed the section 366.22 hearing set for May 5, 2015, and authorized paternal grandfather to supervise father's visits.

On January 28, 2015, father's counsel set the matter of visitation on calendar via ex parte. Father was now in phase III of Family Preservation Court. The court and counsel conferred and father was granted increased visitation from two to four hours. The court ordered the social worker and C.M. to agree upon a schedule for the visits.

C.M. filed a motion for de facto parent status for minor, which was granted. The May review hearing was confirmed.

On April 23, 2015, Harding submitted a status review report for the May 5, 2015 hearing. She recommended terminating services to father, and honoring the previous adoption assessments. On April 28, 2015, Harding submitted an addendum report to address father's progress in individual therapy with Peter Hilliard. Hilliard told the social worker that he had not seen father for approximately a month. Father missed his appointment on April 7, 2015, and did not call. When Hilliard called father on April 16,

father simply stated that he had forgotten about his appointment. Hilliard stated that father "is very immature, takes no responsibility for his actions that includes his drug use and criminal activity, and he blames everyone for his problem[s] including [DPSS]. He further stated that [father] lacks insight into his problems and his judgment is very poor." Hilliard stated that father "needs long term therapy to work on his issues, which includes his drug uses [*sic*] and criminal activities. Mr. Hilliard stated that he could not recommend that the child be returned to [father's] care." At the hearing on May 5, 2015, the court continued the case to obtain the therapist's written recommendation.

On June 2, 2015, Harding submitted an addendum report for the hearing. A letter from therapist Hilliard was attached. In the letter, Hilliard stated that father initially was immature, lacking in insight, and reluctant to take responsibility for his past behavior. The therapist, however, noted that father "appears to be sober and stable; no dangerous behavior has been observed or reported. His insight has improved and he has shown some movement towards completing his treatment goals." At the hearing, the matter was continued to June 30, 2015.

On June 25, 2015, Harding filed an addendum report for the June 30, 2015, hearing. Harding spoke with Jennifer Grant, father's in-home parenting therapist. Grant stated that father "is enthusiastic and appears to be learning." She also stated that "she would not be comfortable to say that [father] can parent his child, as he only visits and that cannot be considered as parenting." Grant further stated that "it is not in her scope of practice and so she cannot teach developmental milestones, and drug exposed children."

6

At the hearing on June 30, 2015, DPSS and counsel conferred and the case was continued to September 17, 2015, to allow father time to complete his case plan. The juvenile court ordered father to have supervised visits once per week, to attend NA meetings, and to obtain a sign-up sheet. Father was also to attend all of minor's medical appointments between June 30 and September 17, and DPSS was to provide some kind of sign language training to father. The court indicated the sign language could be through a class, or C.M. could show father what signs minor used in lieu of speaking. The court further ordered father to continue seeing Hilliard.

On August 31, 2015, Harding filed an addendum report for the hearing scheduled for September 17, 2015. In the report, Harding stated that she received a telephone call from father after the June 30 hearing; he was upset that Hilliard had said father was not ready to parent minor. Father told Harding that Hilliard had seen father only briefly and therefore, father felt that Hilliard could not give an informed opinion. On July 1, 2015, Hilliard and Harding spoke. Hilliard stated that he would not continue counseling father and a new provider should be provided to him. Based on that information the case was continued to October 8, 2015.

Trial commenced on October 8, 2015. Harding testified for three hours that day. Father's counsel questioned the social worker as to what progress father had made in his case plan. Harding stated father had completed Family Preservation Court, in-home parenting, tested negative for controlled substances (with the exception of one missed test on September 11, 2015), and was engaged in therapy. As to the issue regarding father's attendance at speech therapy for minor, the social worker testified she failed to

7

accommodate father's schedule to ensure that he could attend the speech therapy appointments.

The social worker also testified she was aware father was employed and living at his parents' home. She was unaware he got a raise and was looking for housing.

Harding had not attended a visit with father and minor since August 2015. However, Harding still felt that father was incapable of meeting minor's medical, dental, developmental, and emotional needs. The social worker testified she had never considered giving father unsupervised visits because she did not trust his ability to care for minor.

Harding testified that she did not know she had the ability to place a child in family maintenance with a parent, even though the parent had completed substance abuse treatment, testing, parenting classes, and attended therapy. She acknowledged father was attending the speech therapy appointments to the best of his ability.

On October 13, trial resumed with father taking the stand. He testified he had three counseling appointments with Hilliard. Father was upset with Hilliard because he made a recommendation without enough sessions to know father.

Father testified he had a new therapist, Deren Mikels; they had two sessions together. Father had other appointments scheduled, but when the therapist discovered the sessions conflicted with minor's speech therapy, he advised father to attend those sessions instead.

Father acknowledged he did not believe minor needed speech therapy at first. He also questioned medical treatment for his son's skull size. In retrospect, father was glad

minor was being treated for both issues. Father also acknowledged being difficult with the social worker. He felt that he just wanted information but the social worker did not listen to father's concerns.

Father testified he attempted to attend a sign language class but was told the class was not being offered. He, however, taught himself how to sign and began to sign with minor. He is able to communicate with minor and minor responded to the signs.

Father testified the social worker did not accommodate his work schedule until the court ordered father to attend the therapy and medical appointments. In August 2015, the social worker started accommodating father's schedule, and father was able to attend on a more regular basis.

Moreover, father testified he attended NA/AA meetings on a regular basis. He had been attending regularly since January 2014. He did not show his attendance cards to the social worker because he does not have a good relationship with her. He wanted unsupervised visits but did not ask Harding for them. He pushed a couple of hearings back, but he thought the social worker should accommodate him because he was following his case plan. Father also stated that, as to the first in-home parenting referral, it was his understanding the referral was closed and minor could not be placed in the care of the paternal grandparents. Father was confused as to how he could complete his in-home parenting if his child was not there.

The third witness to testify at trial was C.M. C.M. testified that the first speech therapy session was on April 20, 2015. As of June 30, when the court ordered father to attend, C.M. provided a schedule to father. C.M. testified she did not have control over

the scheduling as the therapist had 30 clients; they fit minor in when the therapist was available. In September, the schedule changed to a later time when father was ordered to attend the sessions.

C.M. also testified that father had made derogatory remarks regarding minor's need for speech therapy. In July 2015 father made a statement indicating that minor was not talking because he was placed in a Spanish-speaking home. Father, however denied making any derogatory statements; he was simply trying to understand the needs of minor.

Furthermore, C.M. testified that she would only communicate with father via text. Father confirmed C.M. only communicated with him via text messages.

After hearing testimony and argument from counsel, the juvenile court ruled that by a preponderance of the evidence, minor could not be placed with father.

## DISCUSSION

In his writ petition, father contends the juvenile court erred in terminating services to father and in setting a section 366.26 hearing based on the court's finding that the return of minor to father would create a substantial risk of detriment to the safety, protection, or physical or emotional wellbeing of minor. In the alternative, father argues reasonable services were not offered to father.[3] For the reasons set forth *post*, we deny father's writ and affirm the juvenile court.

---

[3] Real party in interest DPSS filed a letter indicating it did not intend to file a response to the writ petition.

10

A.    STANDARD OF REVIEW

Section 366.22, subdivision (a) provides in relevant part:  "the court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child.  The social worker shall have the burden of establishing that detriment. . . .  *The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental.*  In making its determination, the court shall review and consider the social worker's report and recommendations and . . . the efforts or progress, or both, demonstrated by the parent."  (§ 366.22, subd. (a), italics added.)

"Appellate justices review a respondent court's decision after a section 366.22 ruling as follows:  'Evidence sufficient to support the court's finding "must be 'reasonable in nature, credible, and of solid value; it must actually be "*substantial*" proof of the essentials which the law requires in a particular case.'"  [Citation.]  "Where, as here, a discretionary power is inherently or by express statute vested in the trial judge, his or her exercise of that wide discretion must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.  [Citations.]"  [Citations.]'  [Citations.]  In the presence of substantial evidence, appellate justices are

11

without the power to reweigh conflicting evidence and alter a dependency court determination." (*Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 705.)

B.      <u>SUBSTANTIAL EVIDENCE SUPPORTS THE JUVENILE COURT'S FINDING OF DETRIMENT</u>

Father contends DPSS failed to "meet their burden of showing that it would be detrimental to return [minor] to his father." Father, however, fails to recognize the standard of review on appeal. On appeal, our duty is "to determine whether there is any substantial evidence to support the juvenile court's findings." (*Curtis F. v. Superior Court* (2000) 80 Cal.App.4th 470, 474.)

In this case, substantial evidence supports the juvenile court's finding of detriment if minor were to be returned to father's custody. Minor was detained from parents in July 2013, when he was only one month old, due to parents' substance abuse issues, criminal histories and transient lifestyles. Father was initially given reunification services with liberalized visitation, as well as return upon case plan compliance. Father started a residential substance abuse treatment program but left after a brief stay. He became incarcerated on October 31, 2013. When he was released in January 2014, he reentered Hope House. Therefore, per DPSS's recommendation, the juvenile court terminated reunification services in March 2014. Father, however, continued supervised visits with minor.

On November 5, 2014, the juvenile court granted father's request to change a court order and ordered six months reunification services to father. The reunification plan contained counseling, parenting education, completion of the substance abuse

treatment program, and random testing for DPSS. At the contested section 366.26 review hearing in October 2015, "11 and a half months after services were initially given," the juvenile court noted that "they're not done. And we are well past statutory time for them to have been completed." The court went on to state that "services provided to father were reasonable. He just stopped following through or was on a slow path to begin, maybe both. But everything after May of 2015, frankly, was grace and should have been accepted as grace and blazed through with a wholehearted attitude to get [minor] in a position to come back to his care. And here we are on October 14, and I still don't have all the services completed."

The court then went on to assess the credibility of father's testimony that sign language class was not offered at the church; hence, he could not finish his case plan. The court stated, "And I don't believe for one minute that there was no sign language class offered at the church. It was viewed and a phone number was given, and it just wasn't followed up on. So I'm not sure what the lack of urgency, I guess I could phrase it, as to follow through is. But time is of the essence." Additionally, the court noted father had also failed to provide proof that he had been participating in substance abuse programs. "Something as basic as court cards from NA, AA have never been provided to the Court. So I did hear father say he went, but I have no other information that he actually went. Those basic things are missing. That's a bit of a concern." The court further noted, "in addition to the case plan not being complete, there is no appropriate housing for [minor] with father. The home he resides in is not cleared, and we have known that since at least December or so of 2014."

13

Therefore, the court found, "by a preponderance of the evidence, returning [minor] to parents would create a substantial risk of detriment to his safety, protection, physical or emotional well-being." The court also terminated reunification services for father.

In support of his writ, father attempts to retry his section 366.26 review hearing. He only points to facts that support his argument—he tried to attend the sign language course but the designated church did not provide the class; he attended AA/NA meetings and had the attendance cards; he attempted to attend every medical and dental appointment for minor; and he attempted to attend therapy. Notwithstanding, there was evidence to the contrary provided by the social worker, C.M., and therapist Hilliard. Issues of credibility are clearly the domain of the trier of fact. (*In re E.B.* (2010) 184 Cal.App.4th 568, 575.) Moreover, while father argues an inference from the evidence that is contrary to the inference drawn by the court, our task is not to reweigh the evidence or select between competing inferences, but merely to determine if there was substantial evidence from which the juvenile court could reasonably reach the conclusion it did. (*In re S.C.* (2006) 138 Cal.App.4th 396, 415.) In this case, drawing all reasonable inferences in favor of the court's ruling, the facts support the court's finding that minor would have been at risk in the care of father.

Based on the above, we find substantial evidence supports the juvenile court's finding that the return of minor to father's custody would create a substantial risk of detriment to minor.

C.    SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S

FINDING THAT REASONABLE SERVICES WERE OFFERED TO

FATHER

In the alternative, father argues reasonable services were not offered to him.

Again, we disagree and find that reasonable services were offered to him.

At a 12-month review hearing, the juvenile court must "determine whether

reasonable services that were designed to aid the parent or legal guardian to overcome the

problems that led to the initial removal and continued custody of the child have been

provided or offered to the parent or legal guardian." (§ 366.21, subd. (f).)  If reasonable

services have not been provided, the court can continue the case for up to six months for

a permanency review hearing.  (§ 366.21, subd. (g)(2).)  DPSS "has the burden of

showing by a preponderance of evidence . . . that reasonable reunification services have

been provided."  (*In re Zeth S.* (2003) 31 Cal.4th 396, 410.)

"'In almost all cases it will be true that more services could have been provided

more frequently and that the services provided were imperfect.  The standard is not

whether the services provided were the best that might be provided in an ideal world, but

whether the services were reasonable under the circumstances.'"  (*In re Julie M.* (1999)

69 Cal.App.4th 41, 48.)

"[W]ith regard to the sufficiency of reunification services, our sole task on review

is to determine whether the record discloses substantial evidence which supports the

juvenile court's finding that reasonable services were provided or offered."  (*Angela S. v.

Superior Court* (1995) 36 Cal.App.4th 758, 762.)  "We must view the evidence in the

15

light most favorable to [DPSS] and indulge all legitimate and reasonable inferences to uphold the order." (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1010.) "The adequacy of the reunification plan and of [DPSS]'s efforts to provide suitable services is judged according to the circumstances of the particular case." (*Id*. at p. 1011.)

As provided in detail *ante*, the juvenile court went out of its way to ensure reasonable services were provided to father. In fact, at the hearing prior to the October 2015 contested hearing, on June 30, 2015, the court continued the hearing so father could further participate in reunification services. The court stated, "So dad, you have been given a little gift here. Now you need to go to your boss and you need to tell him that you're going to need to take vacation time, you're going to need to take sick time, because I'm making it very clear for the next judge who handles this matter that there are no excuses. [¶] There's—there are no excuses regarding, oh, I couldn't get there because I had to work. That—that is not going to fly. This should have been tied up a long time ago. It wasn't, so we are going to tie it up today." The court then went on to list the services father was to engage in. The court reminded father, "The only reason I'm giving you this extra time is because you have done a lot and you've done a good job as far as that. But you have to learn how to be a father and how to bond with this child."

Notwithstanding this warning and "gift" of further reunification services, father failed to comply. Instead, at the contested section 366.26 review hearing and in his writ petition, father attempts to place the burden on the social worker for father's failure to complete services. He states, "The issue here is whether social worker Harding made reasonable efforts to assist [father] in areas where compliance proved difficult." Father,

16

however, clearly knew what he needed to do to comply.  He needed to step-up and make time to accommodate the reunification plan.  He cannot blame his work schedule; or declare that he attended AA/NA meetings without providing proof, although the court mentioned the need to provide proof of attendance on numerous occasions.  As the juvenile court told father—if he had problems with his work schedule, it was his duty to work it out with his employer.  The court had been more than generous to father by providing numerous continuances for him to comply with his plan.  Minor's counsel aptly stated at the contested hearing, "Father is here today after almost two years of services, after a stern admonishment by the Court regarding what had to be done and that there would be no excuses, and he sits before us really still making excuses."  Counsel went on to state, "This child has been accommodating his parent since the day he was born, basically.  He's been waiting to have parents step up and be parents to him.  He's been waiting to have somebody there consistently every night to tuck him in, to feed him, to make sure that his needs are addressed, to know his medical history, to know his issues with regard to speech and to be a parent, to be proactive, to know what's going on and how to address those things.  [¶]  He's two and a half years old almost and he's still waiting.  And his father is saying, well, I would do all those things if it works around my work schedule."

Moreover, if father believed that services he was receiving were unreasonable after the juvenile court's specific orders on June 30, 2015, he should have raised the issue with his counsel or the court.  He never did.

17

At the contested section 366.26 hearing, therefore, the court found that "services provided to father were reasonable. He just stopped following through or was on a slow path to begin, or both. But everything after May of 2015, frankly, was grace and should have been accepted as grace and blazed through with a wholehearted attitude to get [minor] in a position to come back to his care. And here we are on October 14, and I still don't have all the services completed."

Based on the foregoing, we find substantial evidence supports the juvenile court's finding that services provided to father were reasonable.

## DISPOSITION

The petition is denied. The stay ordered by this court on November 12, 2015, on the Welfare and Institutions Code section 366.26 hearing is LIFTED.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                                               J.


We concur:


HOLLENHORST _____
                    Acting P. J.


McKINSTER _____
                    J.

18