Filed 9/15/20  Samuel M. v. Superior Court CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SAMUEL M., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY, <br><br> Respondent; <br><br> LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Real Party in Interest. | B305280 <br><br> (Los Angeles County Super. Ct. No. 18CCJP07432B) |

ORIGINAL PROCEEDING; petition for extraordinary writ.  Marguerite Downing, Judge.  Writ granted.

Los Angeles Dependency Lawyers, Inc., Law Office of Amy Einstein, Bernadette Reyes and Jaraal Wallace, for Petitioner.

No appearance for Respondent.

Office of the County Counsel, Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel and Aileen Wong, Senior Deputy County Counsel for Real Party in Interest.

_____

## I.
## INTRODUCTION

Samuel M. (father) filed this petition for extraordinary writ after the juvenile court terminated reunification services and set the matter for a hearing pursuant to Welfare and Institutions Code section 366.26.[1]  He contends there is insufficient evidence the Department of Children and Family Services (DCFS or the Department) provided him with reasonable reunification services.  We agree and grant his petition.

---

[1] All further statutory references are to the Welfare and Institutions Code.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

This petition involves four-year-old M.M. On October 22, 2018, DCFS received a referral alleging physical abuse and neglect of M.M.'s half brother A.J. The next day, a social worker met mother and M.M. at a Burger King. Mother said M.M. had asthma, but she did not have an inhaler or pump. Mother did have an asthma machine for M.M., and mother said M.M.'s physician provides M.M. with medication when needed. M.M. appeared very small for her age. Mother told the social worker that M.M.'s father was in jail and not involved in the child's life.

DCFS sought to remove A.J. and M.M. after discovering mother had 25 prior child welfare referrals and had previously lost custody of eight children. On November 19, 2018, DCFS filed a section 300 petition alleging mother neglected A.J. and the neglect placed M.M. at risk. At a detention hearing held on November 20, 2018, the juvenile court found S.M. to be M.M.'s presumed father. It made detention findings as to both parents and ordered DCFS to provide reunification services to mother and father.

In anticipation of the December 20, 2018 jurisdiction hearing, DCFS filed a report detailing allegations previously sustained against the parents. The only case involving father was a 2013 case alleging his whereabouts were unknown and that he had failed to provide his child with the necessities of life. Nonetheless, based on the prior, sustained

allegations, DCFS recommended that neither parent receive reunification services.

At the subsequent jurisdiction and disposition hearings, the juvenile court sustained the petitions, removed M.M. from her parents, and ordered reunification services for both mother and father. Father was granted monitored visitation and ordered to complete five drug tests, parenting classes, and individual counseling.

On July 1, 2019, DCFS filed a status report in advance of the July 16, 2019 six-month review hearing. DCFS reported father had contacted the Department after his release from jail and began monitored visits with M.M. on June 15, 2019. The report made no mention of father's participation in programs or any efforts by DCFS to assist him with his case plan.

At the July 16, 2019 six-month status review hearing, the juvenile court continued mother's reunification services and set the matter for a contested hearing to determine whether DCFS had provided father with reasonable services.

On August 5, 2019, father called DCFS because mother wanted him to inform the social worker that she was in jail. During the call, father also arranged to meet the social worker on August 9, 2019, but he failed to keep the appointment. Nonetheless, in a last minute information report filed on September 3, 2019, DCFS reported a social worker met with father at a McDonald's restaurant on August 16, 2019. Father told the social worker he was homeless, but provided an address where he could receive

mail.  Father expressed that he wanted to be in M.M.'s life and asked what he needed to do to regain care of his child. The social worker provided father with information about Department resources and a copy of the juvenile court's minute order.  They agreed to meet the next week so father could receive identification and transportation funds from the Department.  Father also told the social worker he had some upcoming job interviews.

On August 19, 2019, the day father was to meet with the social worker, father told her he had a job interview and would not be able to keep their appointment.  They rescheduled and met on August 27, 2019.  At the September 3, 2019 contested six-month review hearing, the juvenile court found the Department had not provided father with reasonable services, continued father's reunification services, and ordered him to complete a full drug program with random testing.

In a January 2, 2020 status review report, DCFS reported father "no showed" to drug tests on August 20, 2019 and August 29, 2019.  In addition, he had not enrolled in any court-ordered classes and was rearrested on August 30, 2019 and November 8, 2019.  Due to his arrests, father's visits with M.M. were inconsistent.  DCFS noted he was not participating in visits with M.M. while incarcerated.  The report did not indicate whether DCFS had attempted to arrange visits between father and M.M. during his incarceration.

On January 10, 2020, the juvenile court continued the matter for a contested 12-month review hearing. On February 3, 2020, DCFS reported that father remained incarcerated at Men's Central Jail in Los Angeles, with a projected release date of August 16, 2020. The Department reiterated that father had failed to participate in any of his case plan and was not receiving visits due to his incarceration.

DCFS also submitted its "Delivered Service Log," which tracks "All Contacts, Services & Visits" regarding the case between August 1, 2019 and January 23, 2020. The only contact between DCFS and father occurred in August 2019 and consisted of: (1) a phone call from father to the social worker on August 5, 2019; (2) a meeting between father and the social work at McDonald's on August 16, 2019; (3) a planned, August 19, 2019 meeting that was rescheduled due to father's job interview, and (4) an August 27, 2019 meeting between father and the social worker.

On September 13, 2019, mother informed the social worker that father was in jail, having been rearrested on August 30, 2019. Some three weeks later, on October 7, 2019, the social worker conducted an inmate search and confirmed father was in jail and housed at the Theo Lacy Facility in Orange, California. At the time, the file did not contain an anticipated release date.

At the February 27, 2020 12-month review hearing, DCFS asked the court to terminate father's reunification services. It argued that services had been reasonable "in

light of the [father's] own conduct." DCFS argued (contrary to the evidence in the record) that father was "out and free in the world" from August to November 2019, but made no effort to enroll in any programs or keep the Department apprised of how to reach him. Through counsel, father acknowledged he missed an initial meeting in early August 2019, but argued he subsequently met with the Department's social worker twice in August. DCFS' reports make no mention of any attempts to contact him after August 2019.

The juvenile court prefaced its decision by saying, "this is a really difficult case because to some degree, the Department did not provide reasonable services. [¶] There is this whole open period which there is nothing by the Department to investigate the father." It believed "[t]he Department could have done more" and, in fact, "should have done more" in light of the juvenile court's finding at the six-month review hearing that DCFS had failed to provide reasonable services to father.

"On the other hand," the juvenile court continued, father "did nothing. [¶] He didn't test. [¶] He didn't enroll. [¶] And he has had 15 months. [¶] So the court is not going to find that no reasonable efforts in this case as a shield for [father] to ignore the case plan because of his failure to do programs for the Department." It concluded DCFS had provided reasonable services, that father was not substantially in compliance with his case plan, and that it was not substantially probable that M.M. would return to

7

her parents' care within 18 months of the petition's filing in November 2018. The juvenile court terminated father's reunification services and set the matter for a hearing pursuant to section 366.26.

Father filed this petition for extraordinary writ on May 12, 2020, arguing the juvenile court's finding that the DCFS provided reasonable service to him is not supported by substantial evidence. We agree.

# III.
# DISCUSSION

## A.  *Juvenile Court Findings Regarding the Provision of Reasonable Services and Appellate Standard of Review*

At the 12-month review hearing, if the child is not returned to his or her parent's custody, the juvenile court must "determine whether reasonable services that were designed to aid the parent or legal guardian in overcoming the problems that led to the initial removal and the continued custody of the child have been provided or offered to the parent or legal guardian." (§ 366.21, subd. (f)(1)(A).) Before the juvenile court may find that reasonable services were rendered, "the record should show [the Department] identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the

8

service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414.) "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) "Section 361.5 has been construed, however, to require '[a] good faith effort' to provide reasonable services responding to the unique needs of each family. [Citation.]" (*In re Monica C.* (1995) 31 Cal.App.4th 296, 306.) The Department's efforts are judged according to the circumstances of the particular case. (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.) "Moreover section 366.21, subdivision (g)(3) requires 'clear and convincing evidence' that such services have been offered to the parents." (*In re Monica C., supra,* 31 Cal.App.4th at p. 306.) "The court shall not order that a hearing pursuant to [s]ection 366.26 be held unless there is clear and convincing evidence that reasonable services have been provided or offered to the parent or legal guardian." (§ 366.21, subd. (g)(1)(C)(ii).) The clear and convincing evidence standard of proof requires the trier of fact to make a finding of "high probability." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998–1001.)

"When a finding that reunification services were adequate is challenged on appeal, we review it for substantial evidence." (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 971.) "An appellate court must account for the clear

and convincing standard of proof when addressing a claim that the evidence does not support a finding made under this standard.  When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true. In conducting its review, the court must view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 994, 1011.)  Applying the substantial evidence test, we bear in mind the heightened burden of proof.  (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654.)

**B.	*The Reasonable Services Finding is Not Supported by Sufficient Evidence***

Viewing the evidence in the light most favorable to the Department, we find insufficient evidence it provided reasonable reunification services to father in this case.  As an initial matter, the record does not support the Department's position that father "did nothing."  For example, the Department contends father was released from jail in June 2019 but failed to contact the social worker until August 5, 2019, and then only because mother asked him to

tell the social worker she had been arrested. The record reveals, however, that father contacted the Department almost immediately after his release from jail. In a report filed July 1, 2019, DCFS reported father had been released from Orange County Jail recently, made contact with the Department, and began monitored visitation with M.M. on June 15, 2019. Despite noting that father made contact with the Department soon after his release, the report contains no indication the Department made any efforts to discuss his case plan with him or to provide information about programs and services.

It was only when father initiated contact with the social worker again on August 5, 2019 that the Department arranged to meet with him. Father acknowledges he missed the first scheduled meeting, but the parties agree he soon thereafter met with the social worker twice, on August 16, 2019 and again on August 27, 2019. He was re-arrested three days later, on August 30, 2019.

As a result of the Department's failure to contact father about reunification services until August 2019—some nine months after the case began—the juvenile court found, on September 3, 2019, that the Department had not provided father with reasonable services. Yet, in the six months after that finding, the Department took one action only: After learning from mother, on September 13, 2019, that father was in jail, a social worker waited three weeks before completing an inmate search for father on October 7, 2019. That search revealed father had been incarcerated since

11

August 30, 2019 and was then housed at the Theo Lacy Facility in Orange, California.  Having discovered where father was incarcerated, the Department nonetheless made no effort to contact father in jail, to find out whether or how he might continue to progress in his case plan while incarcerated, or to arrange visits between father and M.M.

We have long held that "[t]he [D]epartment's employees may not simply conclude that reunification efforts are not feasible on the sole ground the parent is incarcerated.  [Citations.]" (*Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1012, superseded by statute on other grounds as indicated in *Earl L. v. Superior Court* (2011) 199 Cal.App.4th 1490, 1504; see also *In re Brittany S.* (1993) 17 Cal.App.4th 1399, 1402 ["'go to prison, lose your child'" is not an appropriate legal maxim].)  It is the Department's obligation to "preliminarily identify services available to an incarcerated parent.  [Citation.]  It cannot delegate to an incarcerated parent the responsibility for identifying such services.  [Citation.]" (*Mark N. v. Superior Court*, *supra*, 60 Cal.App.4th at p. 1012.)

Having failed to make any efforts to contact father at all, much less to meet its obligations to identify services available to father during his incarceration, to maintain reasonable contact with him during the course of a service plan, and to make *reasonable* efforts to assist him in areas where compliance was difficult, (*In re Riva M.*, *supra*, 235 Cal.App.3d at p. 414), DCFS cannot turn around and fault father for his failure to make progress on his case plan.  (See

12

*Mark N. v. Superior Court, supra*, 60 Cal.App.4th at p. 1014 [Department is not relieved of its obligation to provide reasonable reunification services to an incarcerated parent simply because the parent did not request services].)

Nor do we credit the Department's argument that father was "out and free in the world" from August to November 2019 but made no effort to enroll in any programs or keep the Department apprised of how to reach him. The Department's own records indicate that, upon conducting an inmate search on October 7, 2019, its social worker learned father had been incarcerated since August 30, 2019. Although we do not know when father was released from jail, the record reflects that he was rearrested on November 8, 2019. As such, insofar as the record demonstrates, father—far from being "out and free in the world" from August to November 2019—was incarcerated for all or nearly all of that time.

We do not doubt that father could have done more. He could have reached out to the Department after his arrest on August 30, 2019 and he could have inquired about the programs and services available to him during his incarceration. However, it is the Department's obligation to offer and facilitate reunification services, even if the incarcerated parent does not request them. (*Mark N. v. Superior Court, supra*, 60 Cal.App.4th at p. 1014; see also *T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1251 ["'The effort must be made to provide suitable services, in spite of the difficulties of doing so or the prospects of

13

success'") That is doubly true here, where the juvenile court had already found the Department's efforts insufficient on September 3, 2019. It would make a mockery of the juvenile court's finding to then say the Department could fulfill its obligations by locating father in jail and then waiting for him to contact them.

## C.    *Further Reunification Services are Appropriate*

The Department urges us to affirm the juvenile court's order even if insufficient evidence supports its finding that father was provided reasonable services. According to the Department, father cannot show he was prejudiced by the error because there is not a "substantial probability" that M.M. will be returned to his custody if services were continued for another six months. The Department notes father was sentenced to two years in prison, and has a scheduled release date of August 16, 2020, well after the maximum 18-month reunification period. We are not persuaded by the Department's argument.

Here, we conclude the error is prejudicial to father, who faces the loss of his parental rights without ever having been afforded his statutory and constitutional rights to reunification services. (*In re M.S.* (2019) 41 Cal.App.5th 568, 591–592.) "'The remedy for the failure to provide court-ordered reunification services to a parent is to provide an additional period of reunification services to that parent *and* to make a finding on the record that reasonable services

14

were not offered or provided to that parent.'" (*In re A.G.* (2017) 12 Cal.App.5th 994, 1005; see also *In re M.F.* (2019) 32 Cal.App.5th 1, 24.)  This is true even if continuation of reunification services would extend the case beyond the 18-month time frame contemplated by section 361.5, subdivision (a)(3)(A).[2]  (See *In re M.F.*, *supra*, 32 Cal.App.5th at pp. 23–24; *T.J. v. Superior Court*, *supra*, 21 Cal.App.5th at pp. 1254–1257; see also § 366.21, subd. (g)(1)(C)(ii) ["The court shall not order that a hearing pursuant to [s]ection 366.26 be held unless there is clear and convincing evidence that reasonable services have been provided or offered to the parent or legal guardian"].)  Accordingly, father's August 16, 2020 release date poses no barrier to our decision.

---

[2] We are not swayed by the Department's citations to *In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1365 and *Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, 1031–1032.  Unlike the situation before us, both cases involve an *affirmance* of the juvenile court's finding that reasonable services had been provided.

## IV.
## DISPOSITION

The petition for extraordinary writ is granted. The juvenile court is directed to find that reasonable services were not offered to father and to provide him an additional six months of services.


MOOR, J.

We concur:



BAKER, Acting P. J.



KIM, J.