Filed 7/28/21  S.W. v. Superior Court CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| S.W., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF SAN FRANCISCO COUNTY, <br><br> Respondent; <br><br> SAN FRANCISCO HUMAN SERVICES AGENCY et al., <br><br> Real Parties in Interest. | A162611 <br><br> (San Francisco County Super. Ct. No. JD20-3119) |

Petitioner S.W. (Father) seeks extraordinary relief from the juvenile court's orders issued at a six-month review hearing (Welf. & Inst. Code, 366.21, subd. (e))[1] to terminate reunification services and set a section 366.26 permanency planning hearing for his now 15-month-old son, M.W. (Minor). Father contends that insufficient evidence supports the court's (1) finding of substantial risk of detriment to Minor; (2) termination of reunification services for Father; and (3) finding that reasonable reunification services were provided to Father.  (§ 366.21 subds. (e)(1), (e)(3), (e)(8).)  We deny the petition and request for a stay of the section 366.26 hearing.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

# BACKGROUND

## A.

In May 2020, the San Francisco Human Services Agency (Agency) received a referral for newborn Minor after his mother, L.W. (Mother),[2] tested positive for methamphetamines at the time of his birth. The Agency filed a section 300 petition alleging Minor was at substantial risk of harm due to Mother's substance abuse issues, Mother's mental health issues, Father's substance abuse issues, and domestic violence between Mother and Father. It also alleged Minor was at risk of further neglect because Mother refused the baby treatment: after doctors noticed signs of withdrawal, she did not allow the doctors to complete any newborn screenings, assess the baby for withdrawal, or take him to the neonatal intensive care unit. The social worker reported that she had spoken with both Mother and Father at the hospital, and Father had denied using drugs. Father also denied that Minor was experiencing any withdrawal symptoms, stating that Minor was shaking because he had been startled after something was dropped in the room.

At the contested detention hearing, the court found a prima facie case had been made that Minor came within section 300, there was a substantial danger to Minor's physical health, and there were no reasonable means to protect his health absent removal; it ordered Minor detained. The court also provided the Agency with the authorization to consent to medical care on behalf of Minor.

In its June 10, 2020 report, the Agency stated that Father was incarcerated in jail with no anticipated release date on various charges, including possession for sale of cocaine base, second degree robbery, and

---

[2] Mother is not a party to this proceeding and is mentioned only where necessary.

forcible rape. In its August 25, 2020 addendum, the Agency recommended reunification services to Father because his criminal proceedings were still at the "preliminary stage," and it was unknown whether Father would remain in custody for the duration of the reunification process. The case plan directed Father to "maintain contacts with the Agency and/or service providers so appropriate reunification services can be offered to him." It also stated: "Upon his release and/or when deemed appropriate and safe due to COVID-19, [Father] will notify the Agency of his whereabouts so visitation can be offered to him with Baby [Minor]." The report identified the following services for Father to be considered for reunification: (1) substance abuse assessment/evaluation and treatment; (2) random drug testing; (3) individual therapy; and (4) parenting education. It also provided that the social worker may work with Father "to amend the Case Plan to reflect his needs if and when he was released from jail and availed himself to meet with the [social worker]."

At the contested jurisdiction and disposition hearing, the court declared dependency. It found true the allegation that Minor was at risk of neglect because Mother refused the baby treatment, and added Father's name to that allegation.[3] The court ordered reunification services for Father as recommended by the Agency, and continued the matter for a six-month review hearing. Minor was subsequently placed with his paternal uncle.

---

[3] The Agency requests that we incorporate by reference the record from a prior appeal in the same case, *San Francisco Human Services Agency v. L.W.* (No. A161338), or alternatively take judicial notice of the record. We grant the request to incorporate by reference the September 8, 2020 hearing transcript included in the prior appeal, but otherwise deny the request as unnecessary.

B.

The Agency's February 2021 status review report recommended Minor's dependency status be renewed and reunification services for both parents be terminated.  It stated that Father remained incarcerated, and he denied having substance use or mental health issues.  The social worker had inquired about related services at the jail and was told the substance abuse support group was at capacity and the coordinator was waiting for Father to sign an information release to move forward with additional services.  Father was not able to have a substance abuse assessment or random drug testing while incarcerated.  Father was participating in a parenting class through self-study packets, as in-person classes were not being offered due to COVID-19.

An April 2021 addendum to the report stated that Father was able to gain access to the substance abuse support group, as well as parenting education and employment training self-study classes.  Father had calls with Minor coordinated by relatives, as in-person visitation was restricted due to COVID-19.  Father's criminal defense attorney reported that Father's charges were being reduced and a request was being submitted to release Father on his own recognizance or reduce bail.  The social worker provided a letter regarding reunification services in conjunction with that request.

At the contested six-month hearing, counsel for Father represented that Father had been released from jail on his own recognizance as of April 28, 2021, but he was remanded into custody on May 7 after missing a court appearance on April 30.  The court admitted a document into evidence indicating Father had gone to the emergency room on April 30 for edema, and was discharged at 9:44 a.m. that morning.

Social worker C. Bowers represented that upon his release on April 28, Father did not make any effort to contact her and "[i]t appeared that he was using the dependency hearing to get out of jail." Bowers later testified that when she called Father on April 29, he answered but told Bowers she had the wrong number. Bowers then sent Father an email, identifying referrals that had been made for substance abuse assessment, drug testing, visitation, and individual therapy. Her colleague placed follow-up calls and left voicemails for Father. Father waited until May 6, the day before he was remanded into custody, to return these calls and express interest in services.

After the presentation of evidence and argument, the court noted that this case had first come about because Minor had "serious medical issues" and "is about everything about the child and by these parents complying with those medical issues, the child is thriving, so that is the way I am looking at this case." The court then followed the recommendation of the Agency and terminated reunification services for Father. It found Father had failed to participate regularly and make substantive progress in his case plan, expressing disappointment that Father had not contacted the social worker while he was out of jail. It concluded: "And then after that time period all the way up to May 7 when he goes back for the—there is no contact, and again, I am talking about an eleven-month old baby, so my thinking is that at this point that the recommendation of the department is in the best interest of the child." The court found Minor's return to his parents would create a substantial risk of detriment, and that there was no substantial probability of return. It also found reasonable services had been provided, explaining that the Agency had attempted "to deliver services in the environment in which the father was at." The court continued the matter for a section 366.26 permanency planning hearing.

**DISCUSSION**

Father challenges the juvenile court's finding of detriment, termination of reunification services, and finding that reasonable services were provided. We review the findings and order for substantial evidence. (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688.) "In making this determination, we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders." (*Id.* at pp. 688–689.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)

A.

Section 366.21, subdivision (e)(1) governs the six-month review hearing and requires the juvenile court to return the child to the custody of the parent unless it finds, by a preponderance of the evidence, that return of the child "would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." The Agency bears the burden of proving such detriment. (*Ibid.*) Failure of the parent "to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental." (*Ibid.*)

We conclude that substantial evidence supports the finding of detriment here. Although Father participated in some available services while incarcerated, he failed to comply with his case plan when released from jail. He did not "maintain contacts with the Agency and/or service providers" and did not "notify the Agency of his whereabouts so visitation can be offered to him with Baby [Minor]." He did not return the calls and email from the

6

social workers.  Father also failed to engage in any services during his release.  Instead, he missed his criminal court date and then waited until the day before he was remanded into custody to express any interest in services.  Given Father's failure to comply with any part of his case plan or engage in services during the time he was out of jail, the court reasonably concluded that Minor would be at substantial risk of detriment if returned to Father's custody.  (§ 366.21, subd. (e)(1).)

B.

Section 366.21, subdivisions (e)(3) and (e)(8) provide that the juvenile court may terminate reunification services and schedule a section 366.26 permanency planning hearing for a child under the age of three where "the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan."  If, however, the court finds that there is a "substantial probability" that the child may be returned to his parent within six months, it must continue the matter to a 12-month hearing.  (§ 366.21, subd. (e)(3).)

Father makes three challenges to the court's termination of his reunification services.  None are persuasive.  First, Father relies on his participation in services while incarcerated to argue that he made "substantive progress."  As a preliminary matter, it is unclear whether such participation constituted progress "with respect to alleviating or mitigating the problems that led to [Minor]'s detention."  (*Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, 1029.)  For example, there is no indication that Father had accepted Minor's medical issues or need for treatment after denying his withdrawal symptoms.  But, regardless of his participation in services while in jail, Father failed to comply with his case plan or engage in

7

services when he was out of jail.  Those failures support the court's finding that Father failed to make substantive progress.

Second, Father argues there was "no basis to conclude that there was no substantial probability that the child could not be returned within six months."  We disagree.  Section 366.21, subdivision (g)(1)(A)–(C) sets forth three factors to determine whether there may be a substantial probability of return:  (1) the parent has consistently and regularly contacted and visited the child; (2) the parent has made significant progress in resolving the problems that led to child's removal; and (3) the parent demonstrated the capacity and ability to complete the treatment plan objectives and to provide for the child's safety, protection, physical and emotional health, and special needs.  (*M.V. v. Superior Court* (2008) 167 Cal.App.4th 166, 181.)  Father's failure to visit Minor or meet the case plan objectives after being released from jail directly contradicts these factors and thus supports the court's determination that there was no substantial probability of return.

Third, Father argues the court improperly considered "the quality of the relationship" between Minor and his caregivers in deciding to terminate reunification services.  We disagree with this characterization of the court's ruling.  The court simply noted that Minor had a "serious medical issue," but was now "thriving."  (Cf. *Rita L. v. Superior Court* (2005) 128 Cal.App.4th 495, 507 [concluding that the court improperly considered the quality of the relationship by stating that the case was " 'troublesome' " because the child " 'likes caretaker very much' "].)  Moreover, while the court initially referenced Minor's condition and treatment status, its ultimate determination to terminate reunification services was based on Father's failure to comply with his case plan, which included maintaining contact with the Agency for services and visitation with Minor upon his release from jail.

8

The court concluded, "And then after that time period all the way up to May 7 when he goes back for the—there is no contact, and again, I am talking about an eleven-month old baby, so my thinking is that at this point that the recommendation of the department is in the best interest of the child."

In sum, we conclude that substantial evidence supports the court's termination of reunification services for Father.

C.

Section 366.21, subdivision (e)(3) prevents the juvenile court from proceeding with a section 366.26 permanency planning hearing if it finds that "reasonable" reunification services have not been provided.

"Reunification services need not be perfect. . . . But they should be tailored to the specific needs of the particular family." (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972.) "Services will be found reasonable if the Department has 'identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult.' " (*Id.* at pp. 972–973.) "The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.)

Father contends that the reunification services provided to him were not reasonable for three reasons. First, he argues that the Agency failed to arrange any visitation with Minor, relying instead on his relatives to coordinate calls. While limiting visitation to phone calls between a young child and incarcerated parent may be unreasonable under other circumstances (*In re Brittany S.* (1993) 17 Cal.App.4th 1399, 1407),

9

substantial evidence supports the reasonableness of the visitation that occurred here because COVID-19 prevented in-person visits at the jail.

Second, Father argues that the Agency failed to provide him with any of the services outlined in his case plan, relying instead on the services available at the jail. We find *Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996 instructive here. It explained that "while the department cannot tell prison officials how to run their institutions, it can: notify the prison an incarcerated parent is in need of reunification services; determine whether any appropriate services are available at the particular institution in question; and explore whether changes in the housing of the parent prisoner can be made to facilitate the provision of such services consistent with legitimate prison and public safety concerns." (*Id.* at p. 1013.) *Mark N.* concluded that there was no substantial evidence of reasonable reunification services because the agency "made *no* effort to determine whether any services were available or could be provided to the incarcerated farther" and "never contacted any institution to determine the availability of services to the father." (*Ibid.*) Unlike *Mark N.*, there was substantial evidence to support the court's reasonableness finding here because Bowers investigated what services were available to Father in jail and followed up regarding the availability of the substance abuse support group and additional mental health services. Indeed, Father participated in self-study classes and was eventually able to access the substance abuse support group.

Third, Father argues that there was insufficient follow up by the Agency after his release from jail. We find the argument disingenuous, as the evidence suggests Father purposefully evaded Bowers' April 29 call by telling her she had the wrong number and then failing to respond to the

10

social workers' additional attempts to establish contact with him after his release.

In sum, we conclude that substantial evidence supports the court's finding that the reunification services provided to Father were reasonable.

## DISPOSITION

Father's petition for extraordinary writ is denied on the merits. The request for a stay is also denied. This decision is final immediately. (Cal. Rules of Court, rules 8.452, 8.490.)

11

_____
Rodriguez, J.*

WE CONCUR:


_____
Needham, Acting P. J.


_____
Burns, J.


A162611


---

\* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12