Filed 10/31/23  In re W.S. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re W.S. et al., Persons Coming Under the Juvenile Court Law. | B327089 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>B.S.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. Nos. 19CCJP05396H-J) |

APPEAL from an order of the Superior Court of Los Angeles County.  Charles Q. Clay, Judge.  Conditionally affirmed and remanded with directions.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

————————

# INTRODUCTION

B.S. (Father) appeals from the juvenile court's dispositional order, adopting the Department of Children and Family Services' (DCFS) recommended case plan, which required Father to participate in reunification services. Father argues the juvenile court abused its discretion by adopting DCFS's case plan without determining whether the recommended reunification services were available to Father at Men's Central Jail where Father was incarcerated at the time of disposition.

While we agree with Father that the juvenile court was required to consider Father's incarceration in adopting an appropriate case plan, the record is ambiguous as to when Father was incarcerated and whether he remained incarcerated after the dispositional hearing. Thus, it is not possible to ascertain whether the case plan was reasonable under the circumstances. As such, we conditionally affirm the dispositional order, and remand the matter with instructions to the juvenile court to reconsider Father's case plan based on Father's incarceration status. If Father remains incarcerated, the juvenile court shall vacate its existing dispositional order and adopt a revised case plan that is tailored to Father's circumstances. If, however, Father is no longer incarcerated and the availability of those reunification services has since become moot, the current dispositional order and case plan shall remain in effect.

## FACTUAL AND PROCEDURAL BACKGROUND

The family consists of Father, S.S. (Mother), eight-year-old W.S., six-year-old N.S., and four-year-old K.S. The children also have two siblings who are not subject to this appeal.

The instant case was initiated on November 4, 2022, after the Los Angeles County Sheriff's Department (LASD) executed a

search warrant at Father's home two days earlier based on information that Father was selling narcotics and illegally manufacturing firearms. LASD found Mother, N.S., and K.S. present in the home, which was in an unsanitary and unsafe condition. During its search of the home, LASD recovered a pound of methamphetamine and a firearm, which were in plain view and easily accessible to the children. LASD contacted DCFS.

A DCFS social worker assessed the home and found the conditions deplorable, noting the entire home smelled of feces, was overwhelmed with flies, had no working electricity, and had numerous other dangerous conditions making it unsafe for the children. The social worker interviewed the children, who described instances of domestic violence between the parents and how Father made guns at home.

On November 4, 2022, DCFS filed a Welfare and Institutions Code[1] section 300 petition, alleging the parents created a detrimental and unsanitary home environment, and had a history of domestic violence and drug abuse that endangered the children's safety.

On November 7, 2022, the juvenile court held an initial detention hearing. The children were detained from the parents and the juvenile court set arraignment for November 28, 2022, a pretrial release investigation hearing for December 15, 2022, and adjudication for January 5, 2023. Father was appointed counsel but was not present at the hearing.

---

[1] All statutory references are to the Welfare and Institutions Code.

On November 28, 2022, the juvenile court arraigned the parents. Father's counsel appeared via videoconferencing, and explained Father had tried to call into the hearing that morning but was unsuccessful. After Father's counsel waived reading of the petition and entered a general denial, she requested a visitation order for a minimum of two weekly monitored visits for two hours upon DCFS's contact with Father and a written visitation schedule. The juvenile court granted Father's request.

On December 15, 2022, the juvenile court held a pretrial release investigation hearing. Father appeared with counsel via videoconferencing. Father complained DCFS had failed to comply with the juvenile court's visitation order, indicating he had received only one telephone visit with the children since detention. He again requested a written visitation schedule, including holiday visitations. Father also requested in-person visits and a DCFS monitor for the upcoming holidays, since Mother's relatives did not want to be monitors. The juvenile court granted Father's requests, and ordered DCFS to arrange a visit with Father as soon as practicable.

In its December 15, 2022 jurisdictional and dispositional report, DCFS indicated it had not been able to contact Father for an interview, but stated it would make best efforts to interview him before the January 5, 2023 adjudication hearing, and would file a supplemental report as to the contents of the interview. The report recommended monitored visitation with a DCFS monitor for Father. It also recommended Father participate in individual counseling, parenting classes, a domestic violence program, and substance abuse rehabilitation and drug testing.

On January 5, 2023, the juvenile court called the matter for adjudication. Father was not present, and his counsel indicated

4

Father had recently been incarcerated.  The juvenile court granted Father's counsel's request for a continuance and an in-and-out order to secure Father's appearance at the next hearing, which was set for February 8, 2023.

On January 24, 2023, DCFS filed a last minute information, indicating a social worker attempted to interview Father on January 17, 2023, and found through LASD's Inmate Information Center that Father was being housed at an outpatient program at Men's Central Jail, and that Father had a scheduled court appearance, making him unavailable to interview during the social worker's work hours.  DCFS again indicated it would make best efforts to interview Father prior to the February 8, 2023 adjudication hearing.

On February 7, 2023, DCFS filed another last minute information, indicating three social workers went to Men's Central Jail to interview Father, however, they were informed that Father was unavailable to interview because he was in quarantine.

On February 8, 2023, the juvenile court held a combined adjudication and dispositional hearing.  Father was present with counsel.

The juvenile court sustained the petition and ordered the children removed from the home.  It further ordered reunification services for the parents.

Father objected to the recommended case plan, asserting it was unrealistic given he had been incarcerated since January 3, 2023.  He indicated DCFS had yet to interview him and had failed to inquire with the Men's Central Jail as to what reunification services were available to him.  He also asked the juvenile court to admonish DCFS because Father's attempts to

contact social workers were ignored, and he had not received a single in-person visit since the children were detained. In response, DCFS assured the juvenile court that there were "protocols in place" for it to make sure services were available to Father, and asked the juvenile court to adopt the recommended case plan.

After a discussion held off the record, the juvenile court adopted the recommended case plan and ordered DCFS to provide Father with reunification services. It ordered Father to participate in: a full drug and alcohol program, weekly random and on-demand drug testing, a 52-week domestic violence program, parenting instruction, and individual counseling. The juvenile court also ordered DCFS to ensure Father received weekly phone or video visits while Father was in custody, and two 2-hour visits per week with a DCFS-approved monitor when Father was released.

The juvenile court set a six-month review hearing for August 9, 2023. After a discussion off the record, the juvenile court granted Father's request for an in-and-out order for that date, but acknowledged that it may not be necessary if Father was released before then.

Father appealed.

## DISCUSSION

Father argues the juvenile court abused its discretion by ordering him to participate in various reunification services before DCFS had determined whether those services were available at Men's Central Jail, where Father was in custody at the time of disposition.[2]

---

[2] Father requested judicial notice of the juvenile court's "Indian Child Welfare Act attorney order filed June 7, 2023,"

6

## I.     Governing law and standard of review

"A reunification plan must be tailored to the particular individual and family, addressing the unique facts of that family. [Citation.]  [DCFS] is required to make a good faith effort to address the parent's problems through services, to maintain reasonable contact with the parent during the course of the plan, and to make reasonable efforts to assist the parent in areas where compliance proves difficult." (*Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 598–599.)  "To support a finding reasonable services were offered or provided, 'the record should show that [DCFS] identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable* contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult . . . .' [Citation.]  'The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances.' " (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1426.)

"If the parent or guardian is incarcerated, . . . the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child." (§ 361.5, subd. (e)(1).)  "[DCFS] must preliminarily identify services available to an incarcerated parent. [Citation.]  It cannot delegate to an incarcerated parent the responsibility for identifying such services.  [Citation.] [DCFS's] employees may not simply conclude that reunification

however, Father has not explained the relevance of that order to this appeal.  Therefore, we deny the request.

7

efforts are not feasible on the sole ground the parent is incarcerated." (*Mark N. v. Superior Court (Los Angeles County Dept. of Children and Family Services)* (1998) 60 Cal.App.4th 996, 1012 (*Mark N.*).)

We review the juvenile court's dispositional order, requiring a parent to participate in reunification services, for abuse of discretion. (*In re J.P.* (2017) 14 Cal.App.5th 616, 624.)

**II.    Analysis**

As an initial matter, we agree with Father's general contention—that DCFS did not meet its initial burden to preliminarily identify services available to Father and, therefore, the juvenile court potentially adopted a case plan that virtually guaranteed Father would fail to reunify with his children. The law recognizes incarcerated parents face unique challenges in obtaining reunification services, and places the burden on DCFS to determine what services are available to an incarcerated parent. (*Mark N.*, *supra*, 60 Cal.App.4th at p. 1012.) Here, there is no evidence DCFS attempted to ascertain what services were available to Father before recommending its case plan, which the juvenile court wholly adopted.

However, we are hesitant to reverse the dispositional order and case plan on the record before us. While the record establishes that Father was incarcerated at the time of disposition, the parties disagree as to the start of Father's incarceration, and the record suggests the juvenile court adopted the recommended case plan under the assumption Father would be out of custody shortly after the dispositional hearing.

Father's appellate counsel claims Father was incarcerated from November 2, 2022, the date LASD executed the search warrant, through the February 8, 2023 adjudication hearing.

8

However, this claim is unsupported by the record. Father's trial counsel represented that his incarceration began on January 3, 2023. This date is consistent with other representations in the record by Father's trial counsel. It is also consistent with Father's requests for weekly in-person visits, as well as the record of Father's court appearances throughout the case. Further, an early January 2023 incarceration date is also consistent with the fact that Father's trial counsel only began requesting in-and-out orders after January 5, 2023. Moreover, the record indicates social workers made numerous attempts to contact Father while the case was pending but only attempted to contact him at Men's Central Jail after January 5, 2023. As such, Father's appellate counsel's claim that he was continuously incarcerated from November 2, 2023 through the February 8, 2023 adjudication and dispositional hearing is contradicted by the record before us.

Nevertheless, Father argues his dates of incarceration are immaterial and it is undisputed he was incarcerated at the time of disposition. This may be true. However, the record is unclear as to whether Father remained incarcerated after the dispositional hearing. At disposition, it is apparent that Father's counsel, DCFS, and the juvenile court presumed Father would be out of custody in the very near future. For example, after discussions held off the record, the juvenile court indicates that the in-and-out order may not be necessary for the next hearing, and Father's counsel and the juvenile court discuss implementing a visitation schedule upon Father's expected release from custody.

As the record is ambiguous as to Father's incarceration, and Father's only complaint on appeal is that the reunification

services ordered by the juvenile court may not be available due to his incarceration, we find the better approach is to conditionally affirm the dispositional order and case plan. Upon remand, if the record establishes that Father has been incarcerated since disposition, the dispositional order and case plan are reversed. Under a reversal, the juvenile court is to enter a new dispositional order and a case plan that is tailored to Father's circumstances as an incarcerated parent, and to ensure the ordered reunification services are actually available to him. If, however, the record shows that Father was released from custody after the dispositional order such that the availability of reunification services at Father's place of incarceration is now moot, the dispositional order and case plan shall remain in effect.

## DISPOSITION

The dispositional order is conditionally affirmed, and the matter is remanded to the juvenile court for further proceedings consistent with this opinion.


VIRAMONTES, J.

WE CONCUR:


STRATTON, P. J.


WILEY, J.

10